PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ABRAHAM FINE (CABN 292647)
MOLLY PRIEDEMAN (CABN 302096)
LLOYD FARNHAM (CABN 202231)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3717
    FAX: (510) 637-3724
    Abraham.fine@usdoj.gov
    Molly.priedeman@usdoj.gov
    Lloyd.farnham@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 25-CR-0003-YGR |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO MODIFY FILTER PROCESS |
| v. | |
| SHENG THAO,<br>ANDRE JONES,<br>DAVID TRUNG DUONG, and<br>ANDY HUNG DUONG, | |
| Defendants. | |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

I.     The Government's Investigation..................................................................................2

II.    The Government's Filter Process.................................................................................3

ARGUMENT .........................................................................................................................6

I.     Courts Have Approved the Use of Filter Teams..........................................................6

II.    Defendant's Demand to Stop the Review is Unsupported and Unreasonable.............7

        A.     The government's filter process is reasonable. ..................................................7

        B.     Defendant's requested modifications to the filter process are unwarranted. .....8

CONCLUSION....................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Grand Jury Subpoenas*,
  454 F.3d 511 (6th Cir. 2006) .................................................................................................. 9, 10
*In re Search Warrant Issued June 13*, 2019,
  942 F.3d 159 (4th Cir. 2019) ....................................................................................................... 10
*In re Search Warrants Executed on Apr. 28, 2021*
  2021 WL 2188150 (S.D.N.Y. May 28, 2021) ............................................................................... 6
*United States v. Blakstad*,
  2020 WL 5992347 (S.D.N.Y Oct. 9, 2020) ................................................................................... 7
*United States v. Fernandez*,
  231 F.3d 1240 (9th Cir. 2000) ..................................................................................................... 12
*United States v. Gangi*,
  1 F. Supp. 2d 256 (S.D.N.Y. 1998) ............................................................................................. 12
*United States v. Jarman*,
  847 F.3d 259 (5th Cir. 2017) ......................................................................................................... 7
*United States v. Ruehle*,
  583 F.3d 600 (9th Cir. 2009) ......................................................................................................... 6
*United States v. Yang*,
  2019 WL 5864733 (N.D. Cal. Nov. 7, 2019) ................................................................................ 7
*United States v. Young*,
  2015 WL 5138520 (N.D. Cal. Sept. 1, 2015) ................................................................................ 7

**Statutes**

18 U.S.C. § 371 .................................................................................................................................. 2
18 U.S.C. § 666(a)(1)(B) ................................................................................................................... 2
18 U.S.C. § 1001(a)(2) ............................................................................................................... 2, 3, 4
18 U.S.C. § 1349 ................................................................................................................................ 2
18 U.S.C. §§ 1341 .............................................................................................................................. 2
18 U.S.C. §§ 1343 .............................................................................................................................. 2
18 U.S.C. § 666(a)(2) ......................................................................................................................... 2

# INTRODUCTION

On June 20, 2024, federal agents executed search warrants at the residences of Defendants Sheng Thao, Andre Jones, David Duong, and Andy Duong, as well as the office of California Waste Solutions ("CWS"), and seized electronic devices, including computers, phones, and data storage devices, as well as hard copy material. Before that date, the government also obtained, through search warrants, data from email and electronic communications providers. Shortly after execution of the premises search warrants, government counsel conferred with counsel for the defendants, as well as counsel for CWS, and those counsel separately provided to the government lists of attorney names, email addresses, and phone numbers for the explicit purpose of identifying and filtering out potentially privileged communications. Counsel for David Duong, the movant here, provided government counsel with a list of approximately 49 lawyers and law firms from which the government developed 96 filter search terms. Since then, a government filter team has been working to efficiently segregate potentially privileged material based on the attorney information provided by defendants as well as other generic search terms that typically accompany attorney-client communications. As of this writing, the initial phase of the government's filter process is approximately 90% complete.

Nine months after the filter process has begun in earnest, Defendant David Duong has filed a motion to modify the government's approach to ensuring that the prosecution team does not obtain attorney-client materials. The Court should deny the motion for three reasons. First, as noted, it is untimely. Defendant has been aware that the government has been conducting a filter review of these materials for months and failed to move for any alteration. Second, as set forth below, the government's present filter process is reasonable. To ensure that privileged information is withheld from the prosecution team, the filter team is segregating materials obtained from searches based largely on information provided by defendants as well as search terms commonly associated with attorney-client material. Moreover, the filter team will provide the defense the opportunity to participate and object to anything withheld as potentially privileged by the filter team. Third, given that Defendant already has a copy of the seized materials, and given that Defendant will receive copies of any of the material the filter team provides to the prosecution team through discovery, the modifications Defendant seeks to the filter team's review process would have the effect of unnecessarily freezing the government's review

and thereby delaying the production of discovery to all defendants.  Accordingly, the government respectfully requests that the Court deny Defendant's motion.

## FACTUAL BACKGROUND

### I. The Government's Investigation

The government's investigation relates to alleged public corruption and bribery in the City of Oakland.  On January 9, 2025, the grand jury returned an indictment charging all four defendants with conspiracy to commit bribery in violation of 18 U.S.C. § 371; bribery concerning programs receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(B) or 18 U.S.C. § 666(a)(2); conspiracy to commit honest services mail and wire fraud in violation of 18 U.S.C. § 1349; honest services mail fraud in violation of 18 U.S.C. §§ 1341, 1346; and honest services wire fraud in violation of 18 U.S.C. §§ 1343, 1346.  Dkt. No. 1.  The indictment also charged Defendant Andy Duong with one count of making false statements to government agents in violation of 18 U.S.C. § 1001(a)(2).  *Id*.

Before the return of the indictment, on June 20, 2024, federal agents executed search warrants at each Defendant's residence, as well as at the office of CWS, a recycling company owned by the Duong Family, and seized electronic devices, including computers, phones, and data storage devices, and hard copy material.  Fine Decl. ¶ 2.  Before that date, the government also obtained, through search warrants, data from email and electronic communications providers.  *Id*.  During the search of CWS, federal agents spoke with CWS' in-house counsel, determined which CWS offices belonged to lawyers, and did not search those lawyer offices in order to respect the privilege that may attach to documents there.  *Id*.

Within days of execution of the search warrants, government counsel began conferring with counsel for each of the defendants as well as counsel for CWS.  *Id*., ¶¶ 3-6.  Given that the government had seized a significant number of electronic devices, the government informed counsel for each defendant that it would be conducting a filter review and asked counsel to provide the government with the names, phone numbers, and email addresses for any attorneys that any of the subjects had been communicating with for the purpose of conducting the filter review.  *Id*.  Counsel for defendants Thao, Andy Duong, and David Duong, as well as counsel for CWS, each provided the government with a significant number of attorneys, identified in a way that would allow the government to identify communications involving those attorneys, including names, firms, phone numbers, and email

addresses. *Id*. The government also reached out to counsel for Andre Jones after execution of the search warrants and requested "the names/phone numbers/email addresses for any lawyers Mr. Jones might have electronic communications with, over which you would assert attorney/client privilege with Mr. Jones," but Mr. Jones' counsel did not provide the government with any attorney names or information at that time.[1] *Id*., ¶ 6.

## II.   The Government's Filter Process

After conferring with defense counsel regarding attorney names, phone numbers, and email addresses for the filter review, the government assembled search terms based on the information provided by subjects of the searches to be run on each subject's specific devices and data. *Id*., ¶ 7. For example, the government assembled 96 search terms specific to the attorney list provided by counsel for David Duong. *Id*. The specific search terms that pertain to each defendant are attached as exhibits to the Stern Declaration and have been filed under seal. The filter team was instructed that these terms consisted of words likely to be associated with attorneys or attorney-client communications, as well as the names and law firms that could show up in the devices or papers of each subject. The government also developed search terms based on terms commonly associated with privileged communications, to be used in addition to the search terms related to specific attorneys described above. *Id*. Specifically, the filter team was instructed to run the following search terms on all electronic devices and accounts to identify material that would require further review by the filter team:

- Attorney
- Esq.
- Esquire
- Privilege
- Privileged
- "Work product"

*Id*. Any document, file or message that hit on the corresponding search terms was to be segregated into

---

[1] On February 28, 2025, counsel for Jones provided the government with names and contact information for three attorneys, which information the government has incorporated into its filter process.

U.S. OPP. TO MOTION RE FILTER PROCESS
25-CR-0003-YGR                              3

a set of "potentially privileged" materials that would be subject to further review by the filter team before determination of whether it should be released to the prosecution team. Stern Decl., ¶¶ 2-4.

In addition to the above, the prosecution team provided the filter team with a list of specific categories of communications between certain parties, that would likely be contained in particular chat or text chains or conversations, that would be subject to a more specific filter review procedure.[2] *Id.*, ¶¶ 3, 7. For these communication chains, the filter team was instructed to run the search terms and review any individual messages that hit on the above search terms, and was instructed to manually review the communication chains for any potentially privileged material. *Id*. To the extent there were privileged communications in these specific communication threads, the filter team was instructed to redact those portions that were potentially privileged and treat those redacted portions as "potentially privileged" materials. *Id*.

Concurrent with running the search terms on the specific communication chains and manually reviewing those communications as described in the preceding paragraph, the filter team was instructed to run the search terms (both general terms and those specific to each subject's devices) on the remainder of the search warrant returns.[3] *Id*. After running the search terms on all of the search warrant returns (specific to each subject's devices/accounts), the filter team was instructed to segregate any other material containing any of the search terms, and then the remainder of the materials (whatever did not hit any search terms) were sent to the prosecution team. *Id*. This first phase of the filter process (running the search terms on the warrant returns and providing non-hits to the prosecution team) has been completed on 91 items of digital evidence, with approximately 12 items outstanding, and thus this first phase is approximately 90% complete. *Id*. ¶ 7.

---

[2] These specific communications largely consisted of communications between Duong family members (such as communications between David Duong and Andy Duong) and communications between Sheng Thao and members of her staff (such as communications between Sheng Thao and Chief of Staff Leigh Hanson).

[3] After the filter team obtained images and/or data from the electronic devices and accounts, the prosecution team asked filter agents to provide individual message chains that did not have privilege concerns without running the above-described search terms on those message chains. For example, the filter team pulled and the prosecution team reviewed text message chains between Sheng Thao and David Duong, as there were no privilege concerns in those messages. There were also a significant number of handwritten notes seized from the residence of Thao and Jones. The filter team manually reviewed these handwritten notes for any privileged materials before any contents of the notes were provided to the prosecution team.

Next, the filter team was instructed to review the search-term hits from the data and materials and determine whether they potentially contained privileged information or communications. *Id*., ¶ 4. If the material was clearly not privileged, the filter team was instructed to send that material to the prosecution team. *Id*. If the material was potentially privileged or the filter agents and AUSA could not determine whether it was privileged, the filter team was instructed to keep those materials in the "potentially privileged" set and continue to segregate it from the prosecution team for further review and consultation with defense counsel. *Id*. This process is currently ongoing. *Id*. ¶ 7.

What is left after the running of search terms and manual review by the filter agents and filter AUSA, is a set of "potentially privileged" materials that has not been provided to the prosecution team. For this set of materials, the government has proposed to the defense that the government's filter team provide respective counsel the "potentially privileged" documents identified through the above procedure. Fine Decl., ¶ 9. Defense counsel can then review those materials and identify which documents the party reviewing will assert are privileged, and thereby should not be passed on to the prosecution team. If the filter team disagrees with any of those assertions of privilege, and any disagreement cannot be resolved through meeting and conferring on the issue, defense counsel and the filter AUSA would bring those disagreements to the Court before any disputed portions of the "potentially privileged" material are provided to the prosecution team. *Id*.

To facilitate this process, the government has produced to each defendant digital images or copies of their own devices that the government obtained via search warrant as well as copies of their own account data obtained from third-party service providers (such as iCloud account data). *Id*., ¶ 8. An email account of David Duong's and the items seized from CWS are still in the process of being loaded onto drives and the government expects to produce those items by mid-April. In addition, as part of pre-indictment discussions, the government provided counsel for David Duong with a full copy of his iCloud account in October of 2024, which the government obtained pursuant to a search warrant and which contained a significant number of text messages, emails, and other communications. *Id*. Although counsel for Defendant has had a full copy of his iCloud since October of 2024, they have not informed the government of any specific privileged material in that account and have not identified any privileged communications that would fall outside the scope of the government's filter process. *Id*.

The process described above was implemented by the filter team, including the filter agents and the filter AUSA. Stern Decl., ¶ 7. On February 28, 2025, the government provided counsel for the defendants a detailed description of the process and steps outlined in the filter process memorandum, and provided each separate counsel with the list of filter search terms applied to their client's materials. Fine Decl. ¶ 9. The government has provided the defendants with the names of the filter AUSA (Noah Stern) as well as the agency personnel involved in the filter review. *Id*. None of these individuals have or will work on the investigation or prosecution of this case.

## ARGUMENT

### I.     Courts Have Approved the Use of Filter Teams

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, ... as well as an attorney's advice in response to such disclosures." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (internal citations omitted). "The fact that a person is a lawyer does not make all communications with that person privileged. Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* (internal citations omitted). "[T]he privilege stands in derogation of the public's right to every man's evidence and as an obstacle to the investigation of the truth, [and] thus, ... '[i]t ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *Id.* (internal citations and quotation marks omitted). Typically, an eight-part test determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id*.

To protect the attorney-client privilege, courts around the country, including in this district, have approved the use of government filter teams in criminal investigations to prevent prosecuting attorneys and agents from being exposed to privileged material. *See, e.g. In re Search Warrants Executed on Apr. 28, 2021*, 2021 WL 2188150, at *2 (S.D.N.Y. May 28, 2021) ("[t]he use of a filter team is a common procedure in this District and has been deemed adequate in numerous cases to protect attorney-client

communications."); *United States v. Yang*, 2019 WL 5864733 at *7 (N.D. Cal. Nov. 7, 2019) (describing government use of a taint team in case in which defendant was an attorney); *United States v. Young*, 2015 WL 5138520 at *1 (N.D. Cal. Sept. 1, 2015) (describing use of government taint team to review potentially privileged material); *United States v. Blakstad*, 2020 WL 5992347 at *8 (S.D.N.Y Oct. 9, 2020) ("Furthermore, the use of a filter team protected against any privileged information from being produced to the particular lawyers prosecuting this case against Blakstad. And, despite being provided the full dataset seized and the records the Government has deemed responsive, Blakstad has failed to identify any specific record that should not have been provided to the Government or deemed responsive pursuant to the warrant."); *United States v. Jarman*, 847 F.3d 259, 266 (5th Cir. 2017) (approving government's use of filter team and stating that the "Second, Third, Fourth, Seventh, Eighth, Ninth and Tenth Circuits, in at least some cases, have also either approved of or recognized and declined to criticize the use of government filter teams to screen materials for privilege before items are released to the investigators in the case.").

These cases offer support for the principled approach pursued by the government in the course of obtaining evidence through valid search warrants issued in the course of this investigation. The use of a filter team ensures that only those agents and a filter AUSA have access to and are exposed to potentially privileged communications, and thereby ensures that members of the prosecution team do not make even inadvertent use of privileged communications in the further investigation or prosecution of the case. It is also important to note that the searches here did not involve searches of attorneys or law offices, or searches that in any way were designed to or could have directly targeted the confidential advice provided to the defendants by any attorneys.

**II.     Defendant's Demand to Stop the Review is Unsupported and Unreasonable**

      **A.     The government's filter process is reasonable.**

As set forth above, the government has put in place a reasonable filter process aimed at protecting the defendants' attorney-client privilege while simultaneously allowing the prosecution team to efficiently review the significant amount of material it has obtained pursuant to search warrants. The government assembled search terms based on information provided by defense counsel and also implemented search terms commonly associated with privileged communications. For communication

chains most relevant to the government's investigation (such as communications between selected Duong family members and communications between Thao and key members of her staff), the filter team used search terms and also conducted a manual review of those communications to ensure no privileged communications were sent to the prosecution team. In addition, the government's filter process allows defense counsel to assert privilege over any material the filter team has deemed "potentially privileged" before that material is sent to the prosecution team, and to the extent the filter team and defense counsel have a disagreement over a privilege call, the process allows defense counsel to take that matter to the court before the materials are turned over to the prosecution team. This is not a case in which any defendant is a lawyer or in which the government searched a law office or a lawyer's office. Nor is this a case where there was an overt federal investigation before the devices were seized and the government has no reason to believe that any defendant was aware of the investigation at that time. As such, for the reasons laid out above, the government's filter process is reasonable.

Moreover, the government's filter process has been ongoing for almost nine months and the first phase of that process (transmittal of materials deemed not potentially privileged to the prosecution team) is approximately 90% complete. If defendants had questions or concerns about the government's filter process, they could and should have raised them earlier. This is especially true for Defendant David Duong, who in October of 2024 received a copy of his entire iCloud account from the government, which contained a significant amount of text messages, emails, and other data. Despite having that iCloud account copy since October, and despite knowing that the government was conducting a filter review using search terms provided by counsel, counsel for David Duong have not identified (to either the filter team or the prosecution team) a single item from that iCloud that they believe is privileged or that would not be captured by the government's filter process. Adopting Defendant David Duong's proposed modifications at this stage would unduly interrupt the government's review of data and would delay the production of discovery to all defendants. Accordingly, the government requests that the Court allow the government's filter process to continue.

### B. Defendant's requested modifications to the filter process are unwarranted.

In his motion, Defendant David Duong seeks the following three modifications to the government's filter process, which are taken from the proposed order filed in conjunction with the

motion:

> 1. The government's filter team shall identify to defense counsel all documents that the filter team has previously promoted or intends to promote to the prosecution team in the future so that defense counsel can review the material for any appropriate objections. Defense counsel shall have two weeks from receipt of notice from the filter team to raise any objections. The filter team shall not promote any of the identified materials during the two week period that defense counsel can review for objections.
>
> 2. The filter team shall return all copies of a defendant's privileged material in the government's possession to counsel for that defendant. The filter team shall not maintain any copy of any material it concludes is privileged.
>
> 3. The filter team shall provide defense counsel a copy of the government's filter team protocol. The government may redact any work product from the memorandum containing the filter team protocol before providing the filter team protocol to defense counsel.

Dkt. No. 49-5 at 2.

As an initial matter, the authority Defendant cites in support of these proposed modifications is inapplicable to the circumstances here. For example, Defendant relies heavily on the Sixth Circuit's decision in *In re Grand Jury Subpoenas*, 454 F.3d 511 (6th Cir. 2006) and specifically asserts that "the Sixth Circuit addressed the same issue presented here . . ." Dkt. No. 49 at 9. But that case addressed a different factual situation, and specifically distinguished its holding from cases involving search warrants. As the name of the case suggests, that case came about after the moving party learned that a third party had received a grand jury subpoena for documents, some of which allegedly were subject to the moving party's privilege claims. *Id*. at 512. In that scenario, involving a grand jury subpoena seeking documents not yet in the government's possession, the Sixth Circuit held that the government's use of a filter team was usually inappropriate. *Id*. at 522. In situations involving search warrants, however, the court held that the use of a government filter team was entirely appropriate, specifically stating:

> In the first place, government taint teams seem to be used primarily in limited, exigent circumstances in which government officials have already obtained the physical control of potentially-privileged documents through the exercise of a search warrant. ***In such cases, the potentially-privileged documents are already in the government's possession, and so the use of the taint team to sift the wheat from the chaff constitutes an action respectful of, rather than injurious to, the protection of privilege***.

*Id*. at 522-23 (emphasis added).  As such, the Sixth Circuit's decision in *In re Grand Jury Subpoenas* supports the government's use of filter teams in situations like the one presented here, where the government has already obtained possession of the potentially privileged materials via execution of a search warrant.

Defendant also relies heavily on the Fourth Circuit's decision in *In re Search Warrant Issued June 13*, 2019, 942 F.3d 159 (4th Cir. 2019).  But that case involved the search of a law firm's office during which federal agents seized 37,000 emails from a lawyer even though only 62 of those emails involved the client at issue.  *Id*. at 167.  As that case held, a search of a law office involves heightened sensitivities—especially where the law firm represented many clients with cases pending before the prosecuting office—because almost all seized material will be of an attorney-client nature, which necessitates a carefully supervised filter process.  Those heightened sensitivities, however, are not present in our case.  None of the defendants here is a lawyer and no law firms or law offices were searched.  And when agents searched CWS, they consulted with in-house counsel and did not search any lawyer offices during execution of that warrant.  *See* Fine Decl., ¶ 2.  Accordingly, the concerns the Fourth Circuit expressed in that case are not applicable to our facts.  The other cases Defendant relies on set forth general principles about the attorney-client privilege or involve circumstances in which a filter protocol was violated, which circumstances are not present in our case.

As to Defendant's specific proposals, the first seemingly seeks to freeze the government's review of materials, provide for defense review of all materials that have already been sent to the prosecution team, as well as for defense review of any other material not yet sent to the prosecution team before the prosecution team receives it.  As set forth above, however, the first phase of the government's filter process is approximately 90% complete, the majority of the material has already been sent to the prosecution team, and a significant amount of the government's Attachment B review has already been completed.  Thus, enacting Defendant's proposal at this point would stall the government's review of material and unduly delay the production of discovery to all defendants.  The government submits that its proposal—that each defendant have an opportunity to review and object to any material deemed "potentially privileged" by the government's filter process before it is sent to the prosecution team—is reasonable and strikes an appropriate balance given the advanced status of the ongoing review.  In

addition, the government has produced to each defendant full digital images or copies of their own devices and account data (and Defendant David Duong has had a copy of his full iCloud account since October of 2024).

Defendant's second proposal seeks the return of all privileged information to each respective defendant and requests that the filter team not maintain copies of any privileged material. The government agrees that the prosecution team should not have access to privileged material and agrees to this proposed modification to the extent it applies to hard copy documents seized during execution of the search warrants. The government will return any privileged hard copy item to the defendant to whom it belongs. Defendant's request is more complicated, however, as to digital items seized from accounts or devices. As to data seized from accounts such as an iCloud account, the court-ordered warrants specifically state that after conducting their Attachment B review, "[l]aw enforcement personnel will then seal the original duplicate of the accounts and files received from Apple employees and will not further review the original duplicate absent an order from the Court." Fine Decl., ¶ 10. Thus, to delete privileged data from an iCloud account in the way Defendant proposes would contravene the specific mandate of the warrant. The government has similar concerns regarding data stored on electronic devices. Some of these seized devices are likely to be admitted into evidence at trial and the government should not be required to alter or delete data from those devices, as Defendant's second proposed modification contemplates. Rather, the government agrees to return privileged hard copy material to the respective defendants and to ensure that the prosecution team does not review privileged material contained on electronic devices or in copies of digital accounts.

Defendant's third proposal is that the government provide the defense with a copy of the government's filter team protocol. The prosecution team prepared a detailed memorandum that described the filter process to be followed, and included background about the subjects of the investigation, as well as priorities for materials to search first based on the prosecution view of the case. Defendant has been provided with the substance of the memorandum that pertains to the steps and process used to filter materials. The government's filter protocol document is both work product and sensitive, as it contains a summary of the investigation at that point, a description of the subjects based on the government's investigation at the time, describes the government's priorities for conducting

searches, and includes search terms related to third-party subjects. *See United States v. Gangi*, 1 F. Supp. 2d 256, 263 (S.D.N.Y. 1998) (government's attorney work product, setting forth the government's legal theories, mental impressions, and thought processes "is protected by the work product doctrine, which prohibits unwarranted inquiries into the files and the mental impressions of an attorney"); *United States v. Fernandez,* 231 F.3d 1240, 1247 (9th Cir. 2000) ( "Rule 16 of the Federal Rules of Criminal Procedure recognizes the work product privilege."). Rather than provide that specific document, the government has provided the defense with a detailed description of its filter process and also described that process herein. The description is sufficient to put the defense on notice of how the government is conducting and has conducted its filter review, and in fact the defendant has used the information provided by the government about the process to file its challenge to those processes. The government is of course willing to provide its filter process memorandum to the Court for *ex parte* in camera review should the Court wish to review that document.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court deny Defendant David Duong's motion to modify the government's filter process.

DATED: April 3, 2025　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　PATRICK D. ROBBINS
　　　　　　　　　　　　　　　　　　　　　　　　　Acting United States Attorney

　　　　　　　　　　　　　　　　　　　　　　　　　__/s/_____
　　　　　　　　　　　　　　　　　　　　　　　　　ABRAHAM FINE
　　　　　　　　　　　　　　　　　　　　　　　　　MOLLY K. PRIEDEMAN
　　　　　　　　　　　　　　　　　　　　　　　　　LLOYD FARNHAM
　　　　　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorneys