MARK GOLDROSEN (CSBN 101731)
255 Kansas St Ste 340
San Francisco, CA 94103-5154
Tel: 415-565-9600 | Fax: 415-565-9601
Email: markgoldro@aol.com

SHAWN HALBERT  (CSBN 179023)
217 Leidesdorff Street
San Francisco, California 94111
Tel: (415) 515-1570
Email: shawn@shawnhalbertlaw.com

Attorneys for Defendant
ANDRÉ JONES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>SHENG THAO, ANDRE JONES,<br>DAVID TRUNG DUONG, and<br>ANDY HUNG DUONG<br><br>    Defendants. | CASE NO. 25-CR-0003-YGR<br><br>DEFENDANT ANDRE JONES'S NOTICE OF MOTION AND MOTION FOR *FRANKS* HEARING, AND FOR SUPPRESSION OF EVIDENCE; PARTIAL JOINDER IN DEFENDANTS DAVID DUONG'S AND ANDY DUONG'S MOTIONS RE THE SAME [DKTS. 119 AND 138]; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT  [REDACTED VERSION OF DKT. 140 FILED UNDER SEAL]<br><br>Hearing Date: February 19, 2026<br>Hearing Time: 9:00 a.m.<br>Court: Hon. Yvonne Gonzalez Rogers |

## NOTICE

PLEASE TAKE NOTICE that on February 19, 2026 at 9:00 a.m., or as soon as the matter may

be heard before the Honorable Yvonne Gonzalez Rogers, that defendant Andre Jones will and hereby

does move the Court for an order (1) suppressing evidence seized pursuant to the June 14, 2024 search

warrant or granting a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 165 (1978) regarding

material misrepresentations and/or omissions in the search warrant affidavit sworn on before Magistrate

Judge Kandis Westmore; (2) suppressing the seizure of evidence prior to October 2022 seized pursuant

to the February 23, 2024 warrant; and (3) suppressing evidence other than location data seized pursuant

to the search warrant signed on March 22, 2024 by Magistrate Judge Donna M. Ryu. This motion

partially joins and/or incorporates portions of the motion of David Duong, Dkt. 119, and the

concurrently filed declaration of Neal J. Stephens ("Stephens Decl.") and its exhibits, as well as portions

1

of the motion of Andy Doung, Dtk. 138, and the concurrently filed declaration of Winston Chan ("Chan Decl."). This motion is based on the instant notice, the attached memorandum of points and authorities, the concurrently filed declaration of Shawn Halbert, files and records in this matter, and upon such evidence and argument as may be presented at the hearing.

Dated: December 4, 2025

/s/     Shawn Halbert
SHAWN HALBERT
MARK GOLDROSEN
Counsel for Andre Jones

# MEMORANDUM OF POINTS AND AUTHORITIES

I.      INTRODUCTION…………………………………………………………………...1

II.    FACTUAL BACKGROUND…………………………………………………………2

     **A. The June 2024 warrant affidavit**……………………………………………………2

     **B. The February 2024 warrant and affidavit**…………………………………………6

     **C. The March 2024 warrant and affidavit**……………………………………………...6

III.   LEGAL STANDARD………………………………………………………………6

IV.   ARGUMENT………………………………………………………………………6

     **A. The June 14, 2024 warrant affidavit does not contain probable cause once tainted material is not considered**………………………………………………………………6

         1. Material evidence about Co-Conspirator-1 was omitted from the June 2024 warrant affidavit………………………………………………………………………6

             *a. Potential Money Laundering or Financial Misconduct in 2015-2016 and 2022-2023*………………………………………………………………… 6

             *b. Fraud and Threats Involving Multiple Victims and Millions of Dollars in 2024*

             *c. Co-Conspirator-1's Lies as to the June 9, 2024* shooting……………………...10

         2. SA Haunold's statements in support of probable cause were unsupported and/or wholly based on Co-Conspirator-1's version of events ……………...……………...12

         3. Absent the allegations based on Co-Conspirator-1's unreliable statements and communications with people other than Mr. Jones and Ms. Thao, the Affidavit lacks probable cause as to Mr. Jones …………………………………………………...……16

     **B. The February 2024 warrant is overbroad because it authorizes the seizure of evidence outside the date range for which any facts establishing probable cause are alleged in the affidavit**………………………………………………………………18

     **C. The March 2024 affidavit fails to state probable cause to obtain information other than location data**………………………………………………………………....18

V.    CONCLUSION…………………………………………………………………19

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Andre Jones has been involved in public and governmental affairs and political consulting in the Bay Area for his entire adult life. He has no criminal record. On June 14, 2024, the government filed an affidavit in support of a search warrant for Mr. Jones's home and person. The government relied on a relatively inexperienced agent who adopted the informant's version of events and ignored critical evidence that undermined the credibility of the informant, who had a lifelong history of criminal arrests, fraud and deceit, and who had given demonstrably false information to law enforcement even after he started working with the FBI. Had the magistrate court been given a complete disclosure of the informant's dishonesty and lack of credibility and had the agent affiant not substituted his conclusions for the considerable gaps in any case against Mr. Jones, the magistrate court would not have granted a warrant to search Mr. Jones's home and person.

As to the June 14, 2024 affidavit, Mr. Jones joins portions of David Duong's motion for a *Franks* hearing and for suppression of evidence, as noted below, and raises additional points as to the agent's failure to disclose information as to the informant's lack of credibility as well as the agent's unsubstantiated suggestion that certain evidence was inculpatory.[1] Separately and as to Mr. Jones, the defense will address the remaining facts in that affidavit that do not rely on Co-Conspirator-1's claims or words or the agent's mischaracterizations. Because Co-Conspirator-1's credibility is so impaired in light of additional facts not disclosed to the magistrate court, the court cannot assume that the magistrate court would have credited Co-Conspirator-1's claims or words at all, as it is not as if he can be assigned

---

[1] The defense will refer to the informant as "Co-Conspirator-1" because that what is acceptable to the government, but disputes that the informant conspired with Mr. Jones. The government's position is that the defense's using Co-Conspirator-1's name while describing him as the informant in the affidavit would violate the protective order, whereas calling him "Co-Conspirator-1" (as he is called in the Indictment) would not. The defense agrees that there are usually very good reasons to keep an informant's identity hidden from the public (where it is not already known to the public) but submits that this is not one of those cases, in part due to the informant's own conduct to date. This case is also unusual because Co-Conspirator-1's identity may be determined based on the detailed facts that the government included in the Indictment, when cross-referenced with facts in the public record. The government's position requires the defense to file under seal a discussion of many facts that are already in the public record and domain, which is problematic given that the basis for the defense motion is the government's own conduct, namely what the government knew or should have known but did not present to the magistrate court when seeking a search warrant for the home and person of Mr. Jones. For the purpose of this motion, the defense will use the government's nomenclature.

some proportion of believability. Accordingly, the defense will also ask the court to disregard the "Notes" on Co-Conspirator-1's iCloud, his texts to people other than Mr. Jones or Ms. Thao, and the affiant's conclusions that rely upon Co-Conspirator-1.

While Co-Conspirator-1's credibility is highly relevant to this motion, the key inquiry is the way in which FBI Special Agent Haunold ("SA Haunold"), who had only been an FBI agent for three years at the time he submitted the search warrant affidavit, failed to disclose relevant evidence as to Co-Conspirator-1's credibility, uncritically interpreted the evidence through the self-serving lens provided by Co-Conspirator-1, and even presented exculpatory information in the affidavit as inculpatory based on convoluted explanations that undermined the integrity of the warrant.

Next, Mr. Jones joins Andy Duong's motion as to the February 23, 2024 warrant, Dkt. 138, which also authorized the seizure of evidence from Mr. Jones's iCloud account. The warrant was overbroad because it authorized the seizure of evidence that was created outside the date range for which there was probable cause to search. Any iCloud evidence dated before October 1, 2022 should be suppressed.

Finally, Mr. Jones joins David Duong's motion, Dkt. 119, as it pertains to Mr. Jones, as to the March 22, 2024 warrant affidavit that laid out probable cause to seek historical location data from defendants' cell phone providers based on an asserted need to determine whether they attended particular in-person meetings. But the attached warrant sought broad categories of cellular data not mentioned in the affidavit. Because there was no probable cause asserted to obtain information other than location data, any other evidence obtained pursuant to this separate warrant should be suppressed.

## II.    FACTUAL BACKGROUND

### A.  The June 2024 warrant affidavit

The affidavit in support of the June 14, 2024 search warrant ("the Affidavit") was attached as Exhibit 1 to the Stephens Declaration. The affidavit alleged that David Duong, Andy Duong and Co-Conspirator-1 conspired to solicit Ms. Thao's commitment to perform official acts as the Mayor of Oakland, including but not limited to the purchase of housing units from Evolutionary Homes, in exchange for various benefits to Ms. Thao including a negative political mailer financed by CWS and

commissioned by Co-Conspirator-1, and "direct financial payments" and "the promise of additional payments" to Mr. Jones. Affidavit, ¶ 24.

The defense asks the court to keep in mind that the City of Oakland ("City" or "Oakland") never purchased any units from Evolutionary Homes, that neither Co-Conspirator-1 nor the Duongs received any input into various City appointments, and that there is no evidence of the Duongs getting a 10-year extension for CWS or a land deal at an army base. (SA Haunold acknowledges this in his affidavit at paragraphs 93, 98 n. 12, and 138, but limits his concession by describing the purchase of housing units and input into City appointments as being "promised." Affidavit, ¶ 93).

Mr. Jones joins in the factual description set out in Section II.A. of Mr. Duong's motion.

Additionally, as to Mr. Jones specifically, the facts in the Affidavit that purport to present evidence against Mr. Jones will be listed below. The defense will not include purported facts that rely upon Co-Conspirator-1's statements to law enforcement, "Notes" on his iCloud, his texts to parties other than Mr. Jones or Ms. Thao, or SA Haunold's interpretation of facts based on his "training and experience, and knowledge of the investigation," where such knowledge depended on Co-Conspirator-1's statements to law enforcement, as the purpose of this motion is to demonstrate the lack of probable cause once Co-Conspirator-1's allegations are removed from the narrative. For the purpose of this motion, Co-Conspirator-1's "notes" or texts to people other than Mr. Jones and/or Ms. Thao cannot be credited any more than can his statements to law enforcement. However, the defense will include direct communications between Co-Conspirator-1 and Mr. Jones (and Ms. Thao where relevant), as those communications are relevant to Mr. Jones's state of mind and would appropriately be considered by the magistrate court. The facts offered in support of probable cause to support a search warrant as to Mr. Jones, absent Co-Conspirator-1's untrustworthy statements, are as follows:

Records indicated that on October 8, 2022, Co-Conspirator-1 texted Mr. Jones, saying hello and asking how Mr. Jones was, and then placed an outgoing call to Mr. Jones. Affidavit, ¶ 56. The affidavit states that records reflected a 4-minute phone call between Ms. Thao and Co-Conspirator-1 on October 11, 2022, and several phone calls (or attempts to connect) between Mr. Jones and Co-Conspirator-1 between October 9 and October 12, 2022. Affidavit, ¶¶ 56-57.

Records indicated that on October 12, 2022, after Co-Conspirator-1 and his financial victim texted about a mailer, Co-Conspirator-1 texted Ms. Thao asking, "Where is Andre and my stuff?" Affidavit, ¶ 58. Later that day, records reflect that Mr. Jones and Co-Conspirator-1 spoke for 24 minutes, and shortly thereafter Thao messaged Jones "Hey do you have want (sic) [Co-Conspirator-1] needs? He's asking for it…Pls pls connect with him." Affidavit, ¶ 59. Co-Conspirator-1 sent Mr. Jones two images and then called Jones in a call that lasted for seven minutes. Affidavit, ¶ 60. Later that evening, Co-Conspirator-1 messaged Jones to say: "Let me know of the changes we have graphic guy on stand by…we also bought domain 'TaylorFraud.com,'" Loren Taylor being a mayoral candidate. Affidavit, ¶ 60. The affidavit does not indicate any response from Mr. Jones.

The Affidavit states that Mr. Jones and Co-Conspirator-1 spoke for seven minutes on the phone on October 13, 2022, *id.* at ¶ 62, although as described below, that appears to be incorrect. Co-Conspirator-1 texted Mr. Jones that same day, stating "Looking for messaging under each of the 3pics…We need to send this to print today." Affidavit, ¶ 61. The Affidavit states that Mr. Jones responded to Co-Conspirator-1 that he (Jones) "could not help because it would be 'coordinating,' and asked if [Co-Conspirator-1] could run it by someone else." Affidavit, ¶ 62.[2]

Documents cited in the Affidavit indicate that in December 2022 and January 2023, Mr. Jones deposited checks totaling $20,000 dated October 13, 2022 and December 14, 2022 from an account called ███████████████." Affidavit, ¶¶ 27, 63. The memo lines of the checks read "personal loans." *Id.* at ¶ 63.[3]

On March 7, 2023, Co-Conspirator-1 sent to Andy Duong what appeared to be a message to Mr. Jones asking Mr. Jones to "help us get this non binding non committal letter of interest signed" and

---

[2] Mr. Jones's complete text was: "My understanding is if I help with that part I would be 'coordinating'. Can you run it by someone else?"

[3] The Affidavit was somewhat misleading here, as Paragraph 27 of the Affidavit describes the checks as being "personal checks" and does not mention ███████████. Paragraph 63 describes the same checks as being from "[Co-Conspirator-1's] ███████████ account." Paragraph 96 describes a later check from the same account as being written by Co-Conspirator-1 without mentioning ███████ ██████████ at all. While the affidavit states that Co-Conspirator-1 ███████████████████████ ███████████, Affidavit, ¶ 17, the checks are written on the account of the LLC, not Co-Conspirator-1 personally. The defense is not aware if, as of June 14, 2024, the government had independently verified the connection between ███████████ LLC and Co-Conspirator-1 or was relying on statements from Co-Conspirator-1.

indicating that Ms. Thao had not returned three of David Duong's phone calls. Affidavit, ¶ 80. The affidavit does not indicate any response from Mr. Jones; the Affidavit notes that Ms. Thao never signed that letter. Affidavit, ¶ 80.

Records show a check from the ████████ LLC account to Mr. Jones for $5,000 in April 2023. Affidavit, ¶¶ 27, 96.

On April 11, 2023, Co-Conspirator-1 messaged Andy Duong a "Compensation Package for Evolutionary Homes – AJ Systems Solutions," in a format that looked like a draft agreement, stating that "Evo Homes will pay consultant" "[a] draw against future earnings of $35,000 USD within 7 days of completion" of the independent contractor agreement, with "[r]ecognition of prior draws in the amounts of $5,000 and $20,000 for a total of $25,000 were paid towards future earnings" Affidavit, ¶ 97. The document continued: "For successful completion in the sale of up to 300 units of housing a payment of $300,000 minus prior draws as a base payment. Additionally, for successful sales of units at a price point of $299,000 or more would earn a bonus of $10,000 per unit sold and due to you due and payable to you (sic) for each 100 units sold by the company on units you assisted for such sale. The bonus requires the sale of 300 units and the sales price of $299,000 or above to qualify." *Id.* The document stated that sale of the units had to take place prior to December 31, 2023, which was also the date until which the agreement was valid. *Id.*

Based on returns from Thao's iCloud account, on April 14, 2023 and April 18, 2023, ████ ████ of Evolutionary Homes texted Mayor Thao requesting a brief meeting, to which Mayor Thao responded by asking ██ to email two Oakland city employees at an Oakland government email addresses. Affidavit, ¶¶ 111, 112.

On April 18, 2023, David Duong messaged Co-Conspirator-1 and Andy Duong saying "[Co-Conspirator-1], please call AJ tell him we just finished our meeting and we decided to give home (sic) what he asked for but he need to sign before fund." Affidavit, ¶ 102.

On April 28, 2023, Mr. Jones deposited a check from Evolutionary Homes LLC for $35,000, with a memo that appears to say, "advance per agreement." Affidavit, ¶¶ 27, 109.

On May 26, 2023, ██████ messaged Mayor Thao to confirm an upcoming Zoom, and Mayor Thao did not confirm, Affidavit, ¶ 112, but on May 29, 2023, ██████ messaged Andy Duong, Co-

Conspirator-1 and ██████ to ask about a meeting with Mayor Thao the following day and to indicate ██████'s own availability. Affidavit, ¶ 113. The following week on June 5, 2023, ██████ messaged Co-Conspirator-1 to convey that the Mayor and ██████ were "reluctant" about the housing. Affidavit, ¶ 115.

On November 29, 2023, Mr. Jones deposited a check from Evolutionary Homes LLC for $35,000. Affidavit, ¶¶ 27, 117. The memo on the check appears to say "advance." *Id.* at ¶ 117.

The above is the totality of the facts presented against Mr. Jones that are not tainted by the Co-Conspirator-1's information.

### B. The February 2024 warrant and affidavit

Mr. Jones joins in the description of the warrant and affidavit in Andy Duong's motion, Dkt. 138.

### C. The March 2024 warrant and affidavit

Mr. Jones joins in the description of this affidavit in Mr. Duong's motion, Dkt. 119, Section II.C.

### III. LEGAL STANDARD

Mr. Jones joins the legal argument and caselaw cited in Dkt. 119 and Dkt. 138.

### IV. ARGUMENT

#### A. The June 14, 2024 warrant affidavit does not contain probable cause once tainted material is not considered

    1. <u>Material evidence about Co-Conspirator-1 was omitted from the June 2024 warrant affidavit</u>

Mr. Jones joins pages 11:22 to 14:22, and 15:23-17:1 of Section IV.A and the caselaw cited in Section IV.B. of Dkt. 119.

Additionally, Mr. Jones asks the court to consider the following material that SA Haunold did not include in the Affidavit as it pertains to Co-Conspirator-1's credibility.

        *a. Potential Money Laundering or Financial Misconduct in 2015-2016 and 2022-2023*

While David Duong's motion references a 2016 money laundering probe by the FBI and the San Francisco U.S. Attorney's Office concerning Co-Conspirator-1's bank accounts and attaches a relevant report, *see* Dkt. 119 at 13:17-20 and Ex. 15 to the Stephens Declaration, Mr. Jones would like to

emphasize facts included in that investigation, as they extend not only to 2015 and 2016; the FBI's own report indicates that there was evidence that Co-Conspirator-1 was continuing this behavior in 2022-2023 as well. ████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████

Ex. 15 to Stephens Decl., p. 4. The FBI report then notes that ████████████████████████
████████████████." *Id.* The report states:

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████

██

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████.

### b. Fraud and Threats Involving Multiple Victims and Millions of Dollars in 2024

In the footnote in his affidavit that concerns Co-Conspirator-1's credibility, SA Haunold stated that he had reviewed a May 2, 2024 police report in which a victim reported he had loaned Co-Conspirator-1 $250,000 that the he stated he would not pay back; SA Haunold noted only that "[t]o my knowledge, [Co-Conspirator-1] has not been arrested for this conduct and no charges have been filed" as of the date of the affidavit, which was June 14, 2024. Affidavit, ¶ 30 n.2. However, as described below, there is a reasonable inference that SA Haunold knew or should have known additional and important information as to those allegations against Co-Conspirator-1 at the time he signed and submitted the search warrant affidavit, including that this was a fraud and threats investigation rather than just an unpaid loan, ████████████████████████████████████████████████████
████████████████████████████.

Based on the May 2, 2024 OPD report referenced in SA Haunold's Affidavit, █████████

████████████████████████████████████

*See* Halbert Declaration, Exhibit A ████████████████████

████████████████████████████████ filed under seal, at

4.[4] ████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

█████████████ which, again, was not included in SA Haunold's Affidavit.

In his investigation, Inspector Bettencort also learned of ████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████-

---

[4] This document was not dated or signed and the defense does not yet know why this particular version was produced to the defense. ███████████████████████████████ ███████████████████████████████ However, because the government has taken the position that the defense cannot mention Co-Conspirator-1's name in connection with his being an informant, the defense is filing the ████████████████ under seal.

The defense does not know how much work ███████████ had done between May 20, 2024 and June 14, 2024, when the federal government submitted the Affidavit to Judge Westmore. However, it is clear that the May 2, 2024 complaint ███████████████████ alleged fraud rather than simply an unpaid loan, as well as harassment of ███████████, and it is reasonable to assume that ███████████ had done a fair amount of work between May 20, 2024 and June 14, 2024. SA Haunold should have contacted ███████████ to learn more about the status of the investigation before submitting the warrant affidavit, particularly since SA Haunold informed the court as to the status of that police report by stating that no charges had been filed. Further, the government already had information from a year earlier ███████████████████ ███████ Ex. 15 to Stephens Decl., ███████████████████ ██████████████████████████ ████████████████████████ ███████████████████████████ ██████████████████████████ ███████████████████████████ ████████████████████████ ███████████████████████████ ███████████████ This was not reported by SA Haunold to the magistrate court and is on its face highly relevant to the subject matter of the Affidavit, particularly given Co-Conspirator-1's long, documented history of deceiving the people with whom he was in business

relationships.

### c. Co-Conspirator-1's Lies as to the June 9, 2024 shooting

Co-Conspirator-1's lies to law enforcement regarding his actions in the June 9, 2024 shooting occurred *after* he began working with law enforcement (OPD and the FBI) and *after* he had supposedly disclosed the crimes committed by defendants in this case. Critically, the SA Haunold's Affidavit did not reveal to the magistrate court that Co-Conspirator-1 gave incompatible versions of the June 9, 2024 shooting to OPD and to the FBI on the same day after the shooting. It was impossible for both to be true.

In the early hours of June 10, 2024, Co-Conspirator-1 told OPD that the night before, he was inside his home when he heard loud sounds outside; he went outside to check, arming himself with a handgun, a Glock 23 (which is a 40-caliber gun) for his safety. Ex. 18 to Stephens Decl., p. 6. Co-Conspirator-1 stated that after he exited his front door, he observed an Asian male in the driver seat of Co-Conspirator-1's Chevy Suburban that was parked outside his house. *Id.* Co-Conspirator-1 stated that he saw a black man who was the driver of a white Acura or Honda that was double-parked outside his house; that man exited the white vehicle and shot twice at Co-Conspirator-1 with a black handgun. *Id.* Co-Conspirator-1 said that he dropped down to the floor of his porch and then "returned fire," shooting four times. *Id.* He said that the Asian man entered the white vehicle and both men fled in the car, turned around and returned seconds later, fired two more times at the residence, and fled again. *Id.* Co-Conspirator-1 stated that he *immediately* called 911 and reported the incident, with officers arriving "shortly" after. *Id.*

Later that same day,[5] Co-Conspirator-1 gave the FBI a very different version of the second half of the episode than he had given to OPD. The beginning of the story was fairly consistent (except that Co-Conspirator-1 said that the black man was *outside* of the car when Co-Conspirator-1 first saw him). Ex. 21 to Stephens Decl., p. 1. But Co-Conspirator-1 told the FBI that after Co-Conspirator-1 fired four shots, he tried to call 911 but hung up because no one answered. *Id.* at 2. Co-Conspirator-1 told the FBI that after not being able to reach OPD, he waited ten minutes and opened his door again, at which point

---

[5] ███████████████████████████████████████████████ Ex. 21 to Stephens Decl., p. 1.

he heard two more gunshots, dropped to the ground, saw the same vehicle, and then emptied the magazine of his gun, shooting approximately six more bullets, at which point the vehicle drove away. *Id.*

On June 13, 2024, OPD Officer Jaeger "met with CID Act/Captain O. Daza-Quiroz and Act/Lt. W. Garcia and FBI Agent Ethan Quinn[,] who requested that the case be transferred to Officer Jaeger due to his "status as a TFO with the FBI." Ex. 20 to Stephens Decl., p. 3.

In his June 14, 2024 affidavit, SA Haunold did not tell the magistrate court that only hours apart on June 10, 2024, Co-Conspirator-1 gave two incompatible versions of events to OPD and to the FBI. SA Haunold did not tell the magistrate court that Co-Conspirator-1's statement to the FBI did not match the ballistics collected by OPD, which is that there were only *four* 40-caliber casings on Co-Conspirator-1's front yard and the sidewalk (as well as five 9mm casings in the street, attributable to the other shooter). Ex. 18 to Stephens Decl, p. 2. It does not appear that SA Haunold took any action to check Co-Conspirator-1's call log to verify that he had indeed called the police.

Further, the Affidavit did not reveal that Co-Conspirator-1 changed his account of which firearm he used in the shooting after he was told that he needed to bring the firearm to the OPD. The OPD's report from June 10, 2024 reflected that Co-Conspirator-1 had originally told OPD that he used a Glock 23 to shoot at the men, but after OPD told him that he needed to bring the firearm in for examination, he arrived at OPD with a different gun (a Glock 27) and said he had made a mistake about which gun he had fired. *Id.* at 6-7. This fact, known to OPD on June 10, 2024, was included in the rollover affidavit signed by FBI Special Agent Quinn on June 20, 2024 (an affidavit that was not relevant to Mr. Jones), which stated: "OPD officers reported that there were inconsistencies in the statements made by [Co-Conspirator-1] after the shooting regarding the firearm he used to defend himself. Specifically, at the hospital after the shooting, [Co-Conspirator-1] allegedly initially reported using one type of Glock firearm to defend himself, but when he was asked to surrender the firearm to OPD, he surrendered a different type of Glock (that was consistent with Glock used in the shooting.)" Ex. 2 to Stephens Decl., ¶ 23. However, this was not disclosed to Judge Westmore in connection with the June 14, 2024 search warrant application.

Finally, the FBI did not return to Judge Westmore on or after June 15, 2024 (one day after the search warrant had been signed but five days before it was executed), after OPD (the main case agent

being a TFO with the FBI) received new ShotSpotter data that was inconsistent with Co-Conspirator-1's story to either OPD or to the FBI. ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████ the June 15, 2024 ShotSpotter data should have alerted the FBI that Co-Conspirator-1 was not being truthful when he claimed that his four shots were "return" fire. The ShotSpotter data showed four gunshots that occurred at 9:52 p.m. Ex. 20 to Stephens Decl., p. 5. Then, there were nine shots fifteen minutes later at 10:07 p.m.: Of those nine shots, "[t]he first four appear to be a slow cadence then ramp up to a more rapid pace." *Id.* at 4. Regardless of whether the earlier four shots (at 9:52 p.m.) were made fired by Co-Conspirator-1, *see, e.g.,* Dkt. 119 at 14:23-15:22 (or were part of an unrelated incident), or if the Co-Conspirator fired four shots before the other men fired five shots at 10:07 p.m. (four slow shots fired by Co-Conspirator-1 followed by faster return fire of five shots from the street, which matches the ShotSpotter), either way, the new ShotSpotter data was inconsistent with Co-Conspirator-1's statement that first there were two shots at him, and that he then dropped to the ground and shot back four times in succession (this would have been represented on ShotSpotter as two shots, a pause, then four shots, and then three return shots). Although the Affidavit was signed and submitted to Judge Westmore on June 14, 2024, the warrant was not executed until June 20, 2024. Particularly in light of the information that the government had as of June 14, 2024 – that Co-Conspirator-1 had told two completely different stories to different law enforcement agencies, that his story to the FBI did not match the ballistics, and that he had changed his story about which gun he used after being told to bring in the gun – the new information on June 15 was ample reason for the government to return to the magistrate court to provide it with this important additional information before executing the search warrant.

        2.   SA Haunold's statements in support of probable cause were unsupported and/or wholly based on Co-Conspirator-1's version of events

SA Haunold's Affidavit is almost wholly dependent on the narrative provided by Co-Conspirator-1 and is replete with statements that interpret the evidence through that narrative. The agent's characterizations of evidence to conform to the government's theory and/or what Co-

Conspirator-1 told him are voluminous[6] and need not be covered in their entirety because the magistrate court could not have reasonably relied on those characterizations had it known additional facts undermining Co-Conspirator-1's credibility.

Separately, even when he was not relying on Co-Conspirator-1's narrative, SA Haunold used his "knowledge" and "experience" (he had been an FBI agent for only three years at the time he signed the affidavit, Affidavit, ¶ 4) to recharacterize exculpatory evidence in a way that distorts the presentation of probable cause, or to mistake – or not provide context for – facts.

For example, when SA Haunold first proffered that Mr. Jones was involved in "the scheme" because of his limited role in the mailer, SA Haunold said that Co-Conspirator-1 messaged Mr. Jones about the mailers before they went out and asked for input, not mentioning that in response, Mr. Jones told Co-Conspirator-1: "My understanding is if I help with that part I would be 'coordinating'. Can you run it by someone else?"

When SA Haunold acknowledged much later in the affidavit that Mr. Jones explicitly told Co-Conspirator-1 that he (Jones) could not coordinate on this part of the mailer with Co-Conspirator-1 and asked Co-Conspirator-1 to run it by someone else, Affidavit, ¶ 62, SA Haunold urged the court to interpret Mr. Jones's text to mean the opposite of what it said, namely that Mr. Jones did "coordinate" with Co-Conspirator-1. SA Haunold told the court that "based on [his] training and experience," Mr. Jones's text was indicative of guilt, because "I know that individuals who engage in corruption schemes are often careful regarding what they put in text messages, and *I believe Jones's message is consistent*

---

[6] *See, e.g.*, Affidavit, ¶ 117 (after describing a $35,000 check from Evolutionary Homes that Mr. Jones deposited into his bank account, which had the memo "advance" written on it, SA Haunold opined: "Based on my training and experience and knowledge of the investigation and statements made by [Co-Conspirator-1] during the June 6 interview, I believe this was likely an additional payment to Jones as part of the bribery scheme."); Affidavit, ¶ 87 (interpreting the message from Co-Conspirator-1 to Andy Duong saying "I like the position that proposal or not we have an agreement," as meaning that Co-Conspirator-1 "was referencing the agreement [Co-Conspirator-1] and Andy Duong had with Thao that Thao would arrange for the City to purchase home from Evolutionary Homes in exchange for the mailers and money and a consulting contract for Jones."); Affidavit, ¶ 71 (stating that based on SA Haunold's "training and experience, and knowledge of the investigation," toll records showing that on October 20, 2022, Thao called Duong for one minute "corroborates that Thao and A. Duong continued to be in contact during the timeframe where [Co-Conspirator-1] commissioned the negative political mailer and made payments to Jones," even though Agent Haunold knew that Co-Conspirator-1 told Haunold that he (Co-Conspirator-1) likely gave Mr. Jones the check in December and backdated it (Affidavit ¶ 63 n. 8)).

*with efforts to avoid campaign coordination in text messages*." Affidavit, ¶ 62 (emphasis added). SA Haunold added that his conclusion was "corroborated by the fact that [Co-Conspirator-1] and Jones spoke on the phone that day for approximately seven minutes" because "I know that individuals who engage in corruption schemes frequently talk on the phone rather than text message to avoid detection." *Id.*

But SA Haunold's opinion that Mr. Jones's text (saying that he could not coordinate with Co-Conspirator-1) was just a prelude to an illegal call appears to have been based on a misreading of the toll records. Mr. Jones's text on October 13, 2022 telling Co-Conspirator-1 that Mr. Jones would not review the materials was at 10:26 a.m. Co-Conspirator-1's call log lists a 7-minute call with Mr. Jones on October 13, 2022 at 02:37 UTC,[7] but UTC time is 8 hours ahead of Pacific Standard Time, meaning that the call actually took place on October 12, 2022 at 6:37 p.m., not at 2:37 a.m. on October 13, 2022. Assuming that this was just a simple mistake, even if SA Haunold believed the call was at 2:37 a.m. on October 13, 2022, such call would have *preceded* Mr. Jones's text by eight hours and could not possibly have supported the agent's conclusion that Mr. Jones sent a decoy text but then subsequently coordinated with Co-Conspirator-1 on the phone instead.

Even if the phone call had followed the text, SA Haunold's "training and experience" did not support his telling the court to assume the *opposite* of what the text stated and to infer that because a phone call took place, the participants were committing a crime on the phone call. What is clear from Co-Conspirator-1's history is that there are many innocent people who are unlucky enough to do business with him. The call logs for Co-Conspirator-1 from October 9-12, 2022 show ██████████ ██████████████████████. The agent's reference to his training and experience can be distinguished from where an agent experience enables her to interpret, for example, coded language in a drug case, or common practices of money launderers. Here, the facts were simple – Mr. Jones explicitly told Co-Conspirator-1 that he could not coordinate on that part of the mailers, and the agent had no independent knowledge of the contents of any call, regardless of the date.

---

[7] OAK-14219 (Co-Conspirator-1 call log), call at 10/13/2022 02:37 UTC call between Co-Conspirator-1 ████ and Mr. Jones ████ for a duration of 457 seconds. The defense is not attaching the log to this filing because that single Bates stamp encompasses more than 23,000 lines of data, but the government has the document.

In another example, SA Haunold references a Note found on Co-Conspirator-1's iCloud from March 26, 2023: Haunold describes the *first* part of the Note as Co-Conspirator-1's list of what Co-Conspirator-1 and the Duongs would do for Ms. Thao and Mr. Jones (like an investment of cash for mailers) and then describes the *second* part (labeled "For") as listing the benefits that Co-Conspirator-1 and the Duongs would receive. Affidavit ¶ 90. But under "For," it was listed: "AJ will be part of development team paid $300k flat on sale of units – contract maybe renew for other clients." *Id.* Because the placement of this statement about Mr. Jones's contract in the *second* part of the Note was counter to the government's theory, SA Haunold proffered that the placement of this statement on the second half of the Note was a "mistake" by Co-Conspirator-1: "Based on my training and experience, and knowledge of the investigation, and statements made by [Co-Conspirator-1] during the June 6 interview, I believe this is likely a mistake and was supposed to be listed as one of the benefits Thao and Jones would receive in exchange for the benefits listed in the top half of the note." Affidavit ¶ 90, n.11. Moreover, SA Haunold then proffered that the statement that Mr. Jones would be part of a development team and be paid $300,000 actually meant "an agreement" that it was "in exchange for assistance on Thao's campaign," Affidavit ¶ 91, which again, the Note did not say. Such characterization of evidence as meaning its opposite is not the kind of agent experience and knowledge that can be properly credited by the court.

Relatedly, the June 14, 2024 affidavit stated that where Co-Conspirator-1 references a "$300k contract," SA Haunold believed this referred to an agreement to give Mr. Jones a "$300k per year contract at Evolutionary Homes in exchange for Thao's commitment" to purchase 100 units of housing. Affidavit, ¶ 54. But in an earlier warrant affidavit that SA Haunold presented to Magistrate Judge Donna M. Ryu on March 22, 2024, he dropped a footnote after he made that same claim, acknowledging that "The "300k contract" in this message could also be a reference to the fact that THAO had agreed that the City would purchase 100 housing units for $300,000 each, with a total contract of $30 million…". Ex. 3 to Stephens Decl., ¶ 37 n. 4. The acknowledgment that the statement could have a different meaning unrelated to Mr. Jones was not included in the later Affidavit.

Finally, while the issues as to the June 9, 2024 shooting are most concerning as to Co-Conspirator-1's credibility, SA Haunold's characterization of those events in the Affidavit, as well as his

omissions, are most relevant to the agent, as he is the one who submitted the Affidavit. Not only did SA Haunold omit important facts such as that Co-Conspirator-1 had given incompatible versions of the shooting to different law enforcement agents on the same day and that Co-Conspirator-1's account was inconsistent with the ballistics, but SA Haunold presented Co-Conspirator-1's story as if it were true. The Affidavit stated that "[a]s described in more detail below, on June 9, 2024, [Co-Conspirator-1] was the victim of a suspected targeted shooting due to his cooperation in this investigation," Affidavit, ¶ 30 n.2, and that Co-Conspirator-1 was "relocated…for his safety." *Id.* The affidavit attributed the government's need to spend almost $9,000 by the date the affidavit was signed to actions of defendants in this case. *Id. See also* the Title of Section I of the Affidavit (¶¶ 144-150)( "[Co-Conspirator-1] is Targeted in Shooting,"); and Affidavit, ¶ 144 (attributing to OPD that OPD made contact with Co-Conspirator-1 "after shots were fired at his residence.")

3. <u>Absent the allegations based on Co-Conspirator-1's unreliable statements and communications with people other than Mr. Jones and Ms. Thao, the Affidavit lacks probable cause as to Mr. Jones</u>

Information showing ███████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ █████████████████████ would have materially changed the affidavit's probable cause showing because the magistrate court could not have relied on the Co-Conspirator-1's statements or SA Haunold's conclusions that were based on Co-Conspirator-1's statements.

The evidence against Mr. Jones in the affidavit fell into one of three categories: (1) statements by Co-Conspirator-1 either to law enforcement or to other people, or contained in his iCloud notes; (2) SA Haunold's interpretation of the facts, which depended in large part on Co-Conspirator-1's statements to the government, and (3) documented facts independent of Co-Conspirator-1, as well as Co-Conspirator-1's communications with Mr. Jones or Ms. Thao that related to Mr. Jones. The first two categories are rendered unreliable by virtue of Co-Conspirator-1's decades-long history of fraud and arrests and his willingness to lie to law enforcement even after he had started "cooperating" against defendants. Setting

aside the first two categories, the remaining third category of material did not support a finding of probable cause to issue a search warrant against Mr. Jones's home and person.

Although there was brief telephone contact, as well as very limited texts between Mr. Jones and Ms. Thao and Co-Conspirator-1 in October 2022 about the mailer generally, when Co-Conspirator-1 wanted Mr. Jones to add messaging under the three pictures that Co-Conspirator-1 was using in the mailer, Mr. Jones declined to weigh in, telling Co-Conspirator-1 that Jones's understanding was that if he helped with *that part*, it would be "coordinating," and asking Co-Conspirator-1: "Can you run it by someone else?" Affidavit, ¶ 61. The government never alleged that Mr. Jones's earlier communications violated a state law or amounted to "coordination," nor were those the crimes alleged in the Affidavit.

Mr. Jones deposited checks from ███████████ LLC in December 2022, January 2023, and April 2023 for a total of $25,000.

In March, 2023, Mr. Jones did not respond to Co-Conspirator-1's alleged request for Mr. Jones to get Mayor Thao to sign a "non binding non committal letter of interest," and Ms. Thao was not returning David Duong's phone calls. Affidavit, ¶ 80. Mayor Thao referred ███████ mid-April 2023 requests for a meeting with Evolutionary Homes to her assistants, Affidavit, ¶¶ 111, 112, and it took another month and a half to get a meeting, after which ██████ messaged Co-Conspirator-1 to convey that the Mayor and ███ were reluctant about the housing. Affidavit, ¶¶ 112, 113, 115.

On April 11, 2023, Co-Conspirator-1 texted Andy Duong a "Compensation Package for Evolutionary Homes – AJ Systems Solutions," in a format that looked like a draft agreement, stating that Evolutionary Homes would pay the consultant a draw against future earnings of $35,000 USD and would recognize that prior draws in the amounts of $25,000 were paid towards future earnings. " Affidavit, ¶ 97. Twenty-five thousand dollars was the exact amount that Mr. Jones had received from ██████████. Affidavit, ¶¶ 27, 63, 96. The document noted that successful completion in the sale of up to 300 units of housing would lead to a payment of $300,000 minus prior draws as a base payment, with potential further bonuses. Affidavit, ¶ 97.

On April 18, 2023, David Duong messaged Co-Conspirator-1 and Andy Duong asking Co-Conspirator-1 to "please call AJ tell him we just finished our meeting and we decided to give home (sic) what he asked for but he need to sign before fund." Affidavit, ¶ 102. On April 28, 2023 and November

29, 2023, Mr. Jones deposited checks from Evolutionary Homes LLC for $35,000 each, with memos that appeared to say, "advance per agreement." Affidavit, ¶¶ 27, 109, 117.

On its face, the above does not come close to supporting a finding of probable cause that the crimes alleged by the government had been committed by Mr. Jones. Without Co-Conspirator's 1's self-serving stories, the magistrate judge had no reason to believe that Mr. Jones was part of any criminal conspiracy involving bribing of the Mayor.

**B. The February 2024 warrant is overbroad because it authorizes the seizure of evidence outside the date range for which any facts establishing probable cause are alleged in the affidavit**

In Dkt. 138, co-defendant Andy Duong moved to suppress evidence seized pursuant to the February 23, 2024 warrant for his iCloud account. Andy Duong noted that the warrant authorized the seizure of materials from January 1, 2020 to February 23, 2024. However, the affidavit did not set forth facts establishing probable cause for the seizure of iCloud evidence during the entirety of that date range. *Id.* Rather, in Andy Duong's case, there was only probable cause to seize evidence from December 2021 to February 23, 2024. *Id.*

Mr. Jones joins Andy Duong's motion and its legal analysis for the following reasons. The same warrant and supporting affidavit also sought evidence from Mr. Jones's iCloud account, during the same time range of January 1, 2020 to February 23, 2024. *See* Declaration of Winston Chan, Attachment B at 3, 5. In addition, the warrant is even more overbroad in the case of Mr. Jones. The facts alleged in the affidavit pertaining to Mr. Jones's involvement in a criminal conspiracy only concern the time range of early October 2022 to February 23, 2024, beginning with a meeting between Co-Conspirator-1 and Sheng Thao on October 7, 2022. *Id.* at ¶¶ 32-84. Thus, any evidence seized from Mr. Jones's iCloud account that is dated before October 1, 2022 should be suppressed.

**C. The March 2024 affidavit fails to state probable cause to obtain information other than location data**

Mr. Jones joins in the argument in Section IV.D. of David Duong's motion except that he makes the motion with respect to Mr. Jones, specifically that the affidavit established at most only probable cause to obtain location information associated with Mr. Jones's cell phone.

## V.    CONCLUSION

For the reasons stated above, Andre Jones respectfully requests that this Court (1) suppress evidence seized from Mr. Jones's home and person pursuant to the June 14, 2024 warrant or order a *Franks* hearing regarding the affidavit's failure to disclose relevant information about Co-Conspirator-1; (2) suppress the seizure of evidence from the February 23, 2024 warrant relating to events prior to October 2022, and (3) suppress evidence, other than location data, seized pursuant to the overbroad March 22, 2024 warrant for Mr. Jones's cellular phone records.

Dated: December 4, 2025

/s/      Shawn Halbert
SHAWN HALBERT
MARK GOLDROSEN
Counsel for Andre Jones