MARK GOLDROSEN (CSBN 101731)
255 Kansas St Ste 340
San Francisco, CA 94103-5154
Tel: 415-565-9600 | Fax: 415-565-9601
Email: markgoldro@aol.com

SHAWN HALBERT (CSBN 179023)
217 Leidesdorff Street
San Francisco, California 94111
Tel: (415) 515-1570
Email: shawn@shawnhalbertlaw.com

Attorneys for Defendant
ANDRE JONES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>SHENG THAO, ANDRE JONES, DAVID TRUNG DUONG, and ANDY HUNG DUONG<br><br>    Defendants. | CASE NO. 25-CR-0003-YGR<br><br>DEFENDANT ANDRE JONES'S REPLY IN SUPPORT OF MOTION FOR *FRANKS* HEARING AND FOR SUPPRESSION [REDACTED]<br><br>Hearing Date: March 5, 2026<br>Hearing Time: 10:00 a.m.<br>Court: Hon. Yvonne Gonzalez Rogers |

## INTRODUCTION

The government argues that "[t]his is a public corruption case, not an attempted murder case," Dkt. 151 at 22:8, but that was not true on June 14, 2024 when SA Haunold submitted an Affidavit to Magistrate Judge Westmore seeking a search warrant based on allegations of the attempted murder of a federal witness. These incendiary allegations precipitated the search warrant for defendants' homes, persons and vehicles, with the government admitting that it applied for the search warrant only five days after the shooting notwithstanding an investigation that had been going on for over *a year*. Dkt. 151 at 3. Prior to the submission of SA Haunold's search warrant Affidavit on June 14, 2024, ▮ was

1

demonstrably and unequivocally lying to the Oakland Police Department and the Federal Bureau of Investigation as to the alleged attempt on his life for his federal "cooperation," which meant that he was not merely an alleged participant in a past fraud case but someone willing to lie to law enforcement about a matter far more serious than fraud. SA Haunold's failure to ensure that the magistrate court had accurate information about the shooting alone warrants a *Franks* hearing in this matter. When coupled with the agent's deliberate or reckless omission of information about ▉▉▉ racial animus against Mr. Jones, ▉▉▉ decades-long pattern of defrauding people with whom he was in business relationships, pending unrelated allegations being investigated by the Oakland District Attorney's Office, and the federal government's own money laundering investigations of ▉▉▉ in 2015-2016 and 2022-2023, the defense has met its burden of making a "substantial preliminary showing" of false statements or of recklessness for the truth.

As to whether probable cause remains once ▉▉▉ statements are disregarded, the government only glancingly addresses the very limited factual allegations contained in SA Haunold's Affidavit *as to defendant Andre Jones in particular*. As does the Indictment, the Affidavit lumps together allegations against all four defendants, intertwining those allegations with ▉▉▉ "notes to self" and statements to people other than Mr. Jones, as well as his statements to the FBI before the issuance of the search warrant. A careful review of the actual objective evidence against Mr. Jones shows that the central premise of the case – that the money that Mr. Jones received from Evolutionary Homes was a bribe – was based solely on ▉▉▉ word. The government asks the court to adopt a "holistic" approach to reviewing the affidavit, Dkt. 151 at 4, but this cannot be a substitute for a determination as to whether there was sufficient evidence to support probable cause specifically as to Mr. Jones in light of ▉▉▉s credibility issues. In light of the lack of any evidence tying Mr. Jones to allegations of fraud apart from ▉▉▉'s statements, "notes," or representations to others, this court should grant a *Franks* hearing.

Additionally, Mr. Jones asks this court to find that the February 23, 2024 warrant that authorized the seizure of evidence from Mr. Jones's iCloud account was overbroad and suppress any iCloud evidence dated before October 1, 2022.

# ARGUMENT

A. <u>Legal Authority</u>

The defense joins the legal arguments made in the defendant David Duong's Reply, Dkt. 162 at 2-5 as well as at 11 n.4, which address the government's claim as to the import of earlier warrant affidavits. The government states in its Response that defendants Ms. Thao and Mr. Jones's motions do not analyze or rely on specific legal authority. Dkt. 151 at 30 n. 7. But Mr. Jones's opening motion specifically joined in the motions of co-defendants, *see, e.g.,* Dkt. 141 at 6:18-2, and did not repeat legal arguments for this court to read twice.[1]

As to Mr. Jones's argument that under the second prong of *Franks*, ▓▓▓'s "notes to self" and statements (to people other than Mr. Jones or Ms. Thao) should be disregarded due to ▓▓▓'s lack of credibility, the government argues that the defense does not cite to a case for this specific holding. The government argued that only ▓▓▓'s statements to law enforcement need be excised from the warrant, citing to *United States v. Reeves*, 210 F.3d 1041, 1045 (9th Cir. 2000) for the proposition that if intentional or reckless omissions regarding the informant's credibility were not in the affidavit, and there is nothing else to corroborate the informant's statements, then the "informant's ***testimony*** could not be used to support the search warrant." Dkt. 151 at 27-28. But in *Reeves*, the court did not distinguish between what the informant said to law enforcement versus to anyone else; "testimony" was simply what the informant said. And the court in *Reeves* also balanced against the informant's prior conviction for dishonesty the fact that he had provided truthful information resulting in three arrests for similar conduct to boost his credibility – that situation does not exist here. In fact, all of the cases cited by the government involve situations in which the excised information is independent of the tainted information because it does not come from the same source. Here, by contrast, it is all just ▓▓▓ – as the material omissions from the Affidavit make clear, pre-cooperation ▓▓▓ talking to other people is no more reliable than post-cooperation ▓▓▓ talking to law enforcement.

---

[1] To reiterate, the defense joins in the arguments made in the opening and reply briefs filed by co-defendants and for the sake of judicial economy will focus in this filing on the arguments raised in Mr. Jones's opening motion.

3

B. ███'s Credibility

Mr. Jones raised several additional categories of information (other than those covered in the briefs of co-defendants) that he argued were material evidence about ███ that SA Haunold deliberately or recklessly did not include in his Affidavit. The government's response to these omissions is minimal, relying instead on the argument that the Affidavit explicitly noted that SA Haunold stated that he was not relying on ███'s statements to law enforcement to establish probable cause, but was including them for "context and completeness." Dkt. 151 at 1, Fine Decl. Ex. 6 at ¶ 30, n. 2. However, the government omits the second half of that sentence, in which SA Haunold completes that sentence by adding that ███'s statements "strongly support the existence of the bribery scheme established by the documentary evidence." Affidavit, ¶ 30 n. 2. And in fact as detailed in Mr. Jones' opening motion, SA Haunold did in fact rely heavily on ███'s statements in order to support the allegations in the Affidavit. Nor could the government insulate itself from material misrepresentations or omissions by relying on an agent's self-serving statement in the Affidavit in any event, as it is the court that determines whether the entirety of the affidavit establishes probable cause.

The following is not the entirety of the material omissions as to ███ but the ones on which the Jones team focused:

 1. *Financial Misconduct in 2015-2016 and 2022-2023*

The defense argued that the Affidavit improperly did not include the fact that the government suspected that ███ committed money laundering in 2015-2016. Dkt. 141 at 6-7 (citing also Dkt. 119 at 13:17-20 and Ex. 15 to the Stephens Declaration). Notably, SA Haunold does not offer any explanation for why these facts were not included in the Affidavit, stating in his Declaration in Support of United States' Opposition only that "My understanding is that this matter [a 2015-2016 federal money laundering investigation into Co-Conspirator 1] was closed in 2016 with no arrests and no charges." Haunold Decl., ¶19. In this carefully worded and entirely uninformative statement, SA Haunold does not say what the federal criminal investigation comprised or revealed, or if he even looked at the contents of the file before completing his June 14, 2024 Affidavit. The fact that an investigation was closed does not mean that the investigation did not contain material information.

In fact, a May 8, 2023 FBI-302 states that:

4

1
2
3
4
5
6 Dkt 151 at 7.
7     Additionally, Mr. Jones emphasized that the FBI suspected that ▇ was committing similar
8 illegal behavior in 2022-2023, the same time period as the alleged fraud in this case. The May 8, 2023
9 FBI-302 states that ▇
10 ▇ :
11
12
13
14 *Id.*
15     The government has no answer for why the FBI's suspicion that ▇ was money laundering in
16 2015-2016 and again in 2022-2023 would not have been relevant to the magistrate court.
17     In its motion, the defense also argued that SA Haunold intentionally or recklessly failed to
18 include a more detailed description or further information about pending local investigations into fraud
19 and threats. Dkt. 141 at 7-9. Specifically, in his Affidavit, SA Haunold said only that he had reviewed a
20 May 2, 2024 "report from the Oakland Police Department" "in which a victim reported he had loaned
21 [▇] approximately $250,000 which [▇] never paid back later stated he would not pay back,"
22 and that "[t]o my knowledge, [▇ has not been arrested for this conduct and no charges have been
23 filed." Affidavit, ¶ 30 n.2. Dkt. 141 at 7. The defense argued that SA Haunold should have disclosed that
24 there was more to the victim's allegation that just a loan that had not been repaid, that the allegations
25 involved a loan obtained under false pretenses and that there were related allegations that ▇ had
26 inflated the value of the property securing the loan for a different $3,000,000 loan to someone else. Dkt.
27 141 at 7-9. The defense based its argument on the statement of Alameda County District Attorney
28 Inspector Bettencourt that a May 2, 2024 complaint submitted to the Real Estate Fraud unit of the

1  Alameda County DA's Office alleged that ▉ had "defrauded Mr. Chen" out of $250,000 when
2  ▉ borrowed $250,000 from Chen and failed to inform him that the two pieces of property pledged
3  as security for the loan were already encumbered by a $3 million loan from Balboa LLC to ▉. Dkt.
4  141 at 8.

5      The defense also argued that it was reckless for SA Haunold to tell the magistrate court only that
6  "no charges have been filed" as to the May 2, 2024 complaint without including the status of the
7  investigation six weeks later, when SA Haunold filed his Affidavit on June 14, 2024, and that if SA
8  Haunold had checked the status, he would have learned a number of facts from Inspector Bettencourt,
9  including that when Bettencourt interviewed Andy Duong on June 11, 2024, Duong reported that ▉
10 had approached them with an idea to build container homes in Mexico for low-cost housing, and that
11 ▉ had taken over $1,000,000 and had only delivered two homes, making excuses for not providing
12 receipts or deliveries. Dkt. 141 at 9.

13     The government responds that "SA Haunold had a separate OPD report about a separate
14 purported victim." Dkt. 151 at 20:3-15. The defense reasonably understood the May 2, 2024 report that
15 SA Haunold reviewed and referenced was the same one that Inspector Bettencourt reviewed and
16 referenced because the two incident reports have the same date, both concern allegations against ▉,
17 and both involve $250,000. The defense has reached out to the government to identify the copy of the
18 report that SA Haunold reviewed and will submit further material to the court if the government's
19 response materially changes the defense's argument. If it was the same report, then the defense's
20 arguments stand. If it was a different report, then SA Haunold failed to locate and disclose a different
21 fraud claim involving $250,000 that involved a related but separate fraud of overinflating the real
22 property used to secure the $250,000 loan and obtaining separate loans using the same property as
23 collateral with an overinflated appraisal of $3,000,000.

24     The government accuses the defense of trying to mislead the court into thinking that
25 Bettencourt's affidavit had been filed before SA Haunold filed his affidavit. Dkt. 151 at 19 and n.5. This
26 serious accusation is unfounded. As the government acknowledges, the defense included a link in its
27 filing to the dated and filed Bettencourt affidavit, and also noted that the copy of the affidavit produced
28 in discovery was undated and unsigned. Dkt. 141 at 8 n. 4. The defense never said that SA Haunold

6

possessed Bettencourt's affidavit or that Bettencourt's final affidavit was filed prior to June 14, 2024, only that it was reckless of SA Haunold not to contact Inspector Bettencourt before making a representation as to the *status* of the May 2, 2024 complaint to Judge Westmore on June 14, 2024.[2] The defense also pointed out that the government already had information from a year earlier about the Chen matter based on the May 8, 2023 FBI-302 mentioned above, which indicated that the FBI had suspected that ▓▓▓▓ was potentially doing something illegal with the funds received from Chen. Dkt. 141 at 9. The government does not respond to these arguments.

    2. ▓▓▓▓'s Lies about the June 9, 2024 shooting

The government argues that as to ▓▓▓▓'s lies about the shooting, the defense is focusing on ▓▓▓▓ rather than SA Haunold. That is incorrect. The defense clearly stated in its opening motion that "[w]hile Co-Conspirator-1's credibility is highly relevant to this motion, the key inquiry is the way in which FBI Special Agent Haunold…failed to disclose relevant evidence as to Co-Conspirator-1's credibility." Dkt. 141 at 2. The government also continues to defend ▓▓▓▓, arguing that in spite of his lies to law enforcement, ▓▓▓▓ *believed* that the Duongs had something to do with the shooting, Dkt. 151 at 21, as if any deference should be given to this claim.

Most importantly, the government literally does not respond to the numerous critical facts *known* prior to June 14, 2024 that were not included in the Affidavit:

First, SA Haunold did not tell the magistrate court that only hours apart on June 10, 2024, ▓▓▓▓ gave two incompatible versions of events to OPD and to the FBI. Dkt. 141 at 10-11.

---

[2] The defense motion argued: "[T]he defense does not know how much work Inspector Bettencourt had done between May 20, 2024 and June 14, 2024…[I]t is reasonable to assume that Inspector Bettencourt had done a fair amount of work between May 20, 2024 and June 14, 2024. SA Haunold should have contacted Inspector Bettencourt to learn more about the status of the investigation before submitting the warrant affidavit, particularly since SA Haunold informed the court as to the status of that police report by stating that no charges had been filed." Dkt. 141 at 8 n.4. The defense described some of the other contents of the Bettencourt affidavit, including the threats alleged to have been made by ▓▓▓▓, as examples of the types of information that Haunold could have learned, but explicitly stated that the defense did not know how much of the investigation Bettencourt had done by June 14, 2024 other than where Bettencourt provided a date in his affidavit (like the June 11, 2024 interview of Andy Duong). *Id.* The defense also cited to what it believed to be the under-seal Exhibit J to Winston Chan's declaration, but that is a different document. This does not affect the defense's argument.

Second, SA Haunold did not tell the magistrate court that ▮s statement to the FBI on June 10, 2024 did not match the ballistics collected by OPD the night before. *Id.* at 11.

Third, it does not appear that SA Haunold took any action to check ▮'s call log to determine if he had in fact called the police after the shooting. *Id.*

Fourth, SA Haunold did not tell the magistrate court that ▮ changed his account of which firearm he used in the shooting after he was told that he needed to bring the firearm to the OPD. *Id.*[3]

The attempted murder of a federal witness is one of the most serious allegations that can be made in federal court. There is no dispute that at the time SA Haunold submitted his affidavit, law enforcement knew that ▮ had given incompatible versions of the event to the OPD and/or the FBI, that physical evidence contradicted his story to the FBI, and that he had changed his story about which gun he used when he was told to turn it in. Even if SA Haunold did not personally know this information, it was reckless of him not to have obtained it, particularly where a cross-designated officer was working on the case. The government's statement that even all of these inconsistencies "would not have undermined Co-Conspirator 1 or FBI's belief at the time that the shooting was targeted," Dkt. 151 at 21, ignores the fact that it is the magistrate judge who makes that determination, not the FBI or ▮.

C. <u>Allegations in the June 14, 2024 Affidavit do not Support a Finding of Probable Cause as to Andre Jones</u>

The government skirts the lack of probable cause as to Mr. Jones by liberally inserting the adjective "corrupt" in its descriptions of what the Affidavit allegedly showed (*see, e.g.,* Dkt. 151 at 2 ("corrupt payments made directly to Jones, phone records showing significant communication among all Defendants surrounding these corrupt payments;" *id.* at 13 ("David Duong signed off on the corrupt payments to Jones"); *id.* at 7 ("[c]ommunications in March 2023 with statements consistent with the corrupt agreement, including regarding the signing of a sham consulting agreement with Jones")) ,[4] and

---

[3] Other issues, including the Shot Spotter, are discussed in defendant David Duong's Reply Motion, Dkt. 162 at 5-7.

[4] *See also, id.* at 1 ("financial records showing the corrupt payments"); *id.* at 10 ("financial records showing the corrupt payments, phone records showing significant communication surrounding these corrupt payments"); *id.* at 12 ("Andy Duong confirmed that Co-Conspirator 1's description of the corrupt deal was accurate"); *id.* at 27 ("Co-Conspirator 1 stated 'I feel sure David will back us up,' referencing the fact that he believed David Duong would support them in conversations with Thao and

8

1  this is exactly what SA Haunold did in his Affidavit, characterizing rather than providing evidence. And
2  the government has only one way of trying to prove that *anything* was corrupt, and that is by relying on
3  ▆'s statements (or statements by someone other than Mr. Jones back to ▆).

4      Concerning Mr. Jones, the government has two general categories of allegations – first, that Mr.
5  Jones communicated with ▆ about a mailer funded by the Duongs, and second that Mr. Jones
6  received approximately $95,000 over the course of a year first from ▆'s business entity and then
7  from Evolutionary Homes.

8      As to the first category, the government simply punts. It does not engage with what the defense
9  pointed out in its opening motion, which is that stripped of SA Haunold's inaccurate and inappropriate
10 hypotheses about the communications, all that Mr. Jones is shown to have done is to initially
11 communicate with ▆ about a mailer, and when ▆ asked for more input, told ▆ to consult
12 with someone else because Jones could not "coordinate" on the mailer. Dkt. 141 at 13-14. There was
13 nothing inappropriate about Mr. Jones, who was helping run Ms. Thao's mayoral campaign, talking to a
14 well-known political operative about a mailer. While the government alleges that the Duongs paid for
15 the mailer and that this was part of a larger scheme, there was *no evidence* in the Affidavit that Mr.
16 Jones knew anything about who was paying for the mailer. The government argues only that the
17 "timing" of the calls between Ms. Thao, Mr. Jones and ▆ "indicate Thao and Jones's knowledge of,
18 and involvement in, the corruption scheme." Dkt. 151 at 11. The argument that since innocent calls
19 about the mailer happened at the same time as the alleged corruption scheme, Mr. Jones must have
20 known about the corruption scheme, is a nonstarter.

21     As to the second category, there is no evidence of fraud by Mr. Jones. The documentary
22 evidence in the Affidavit showed that Mr. Jones signed a contract with Evolutionary Homes, of which
23 ▆ and David Duong were both partners. The contract entitled Mr. Jones to payments, and he did in
24 fact receive payments from ▆'s business entity and then Evolutionary Homes. The only evidence

---

27 Jones about the agreed upon corrupt scheme") and ("the affidavit also described financial records and a
28 series of messages demonstrating that David Duong was aware of, and signed off on, the corrupt
   payments to Jones").

that the payments were illicit was ▓▓▓ claim that they were bribes. The government characterizes the written contract as a sham, but again, that is based only on ▓▓▓'s statement that it was a sham.

The government relies on ▓▓▓'s characterizations of the fact that Mr. Jones contacted David Duong directly as proof of a scheme:

> For example, the affidavit described a series of messages between Co-Conspirator 1 and Andy Duong where they expressed frustration that Jones was calling David Duong about the scheme rather than Co-Conspirator 1, and described a message from Co-Conspirator 1 where he opined that Jones was calling David Duong because he wanted "direct access" to the "$$."

Dkt. 151 at 11. Again, the government repeats the word "scheme," but the actual text says that Mr. Jones was contacting David Duong directly about funds, which does not mean the funding was illegal. Similarly, when ▓▓▓ conveyed to David Duong that Mr. Jones allegedly said that he would deliver on his end, in the Affidavit SA Haunold interpreted that statement (as the government does in its Response) as meaning that Mr. Jones was going to deliver by committing a crime. Affidavit ¶ 110, Gov. Resp. at 13. But the evidence itself does not say that (nor is there any proof of what Mr. Jones said or did not say other than via ▓▓▓). The government's Response recites (as did the Affidavit) that ▓▓▓ asked Mr. Jones for help in getting Ms. Thao to sign a "non binding non committal letter of interest signed," Dkt. 151 at 27, glossing over the fact that Mr. Jones did not respond and that Ms. Thao never signed such letter.

The government's reliance on the fact that as public servants and politicians, Mr. Jones and Ms. Thao were not wealthy and struggled, as do the majority of Americans (particularly those in the Bay Area), with the cost of living, Dkt. 151 at 13, is not proof of criminality. Nor is the fact that their spending habits changed once Mr. Jones was receiving money pursuant to a contract with Evolutionary Homes evidence in support of a crime. *Id.*

The defense argued in its motion that because ▓▓▓'s credibility is so impaired in light of additional facts not disclosed to the magistrate court, the court should disregard the "Notes" on ▓▓▓'s iCloud and his texts to people other than Mr. Jones or Ms. Thao. The government responds that there is no specific case on point to support this argument and cites to *Reeves* for the argument that the court can simply disregard the informant's "testimony." Dkt. 151 at 27-28.

As argued above, *Reeves* does not distinguish between an informant's statements to law enforcement and his prior statements to other people; in fact, in *Reeves*, the court credited the informant's testimony because there was independent proof of the informant's credibility on prior occasions. The government does not cite to a case that is on point either, perhaps because it is highly unusual for the government to rely only on the unreliable informant's prior statements to himself and others, in addition to his statements to law enforcement, and then ask a court to disregard only the statements to law enforcement.

It is not as simple as just removing all of ▓▓▓▓'s statements to law enforcement because SA Haunold's presentation and explicit interpretation of the evidence depended so heavily on ▓▓▓▓'s cooperation. Further, while it is common for a cooperator to have the basic credibility issue of having participated in the crime that is being investigated, including fraud, the nature of ▓▓▓▓'s past activity is different – it is persistent and unrelenting fraud of countless people with whom he is in relationship over decades, continuing to the present time. The evidence that was not submitted to the magistrate court was that ▓▓▓▓ appears to always be running a con. Therefore, for example, when ▓▓▓▓ texted Andy Duong that Mr. Jones has agreed to take certain actions, while it may be against ▓▓▓▓'s penal interests to say this, the more relevant inquiry for a serial fraudster would be whether it financially benefits him to do so. In weighing ▓▓▓▓'s "notes to self" and statements to others (apart from Mr. Jones and/or Ms. Thao), the magistrate court would want to know his civil case history and about the two separate federal investigations suggesting that he has a pattern and practice of lying to people where money is concerned. The court would want to know that ▓▓▓▓ is so bold as to lie to the Oakland Police Department and the FBI as to a purported attempt on his life by Mr. Jones's co-defendants.

The Affidavit at issue in this case presents an unusual situation as it pertains to a court's typical approach to a *Franks* issue. Often, the court can determine whether *Franks* omissions or misrepresentations are material by removing the misrepresentations and/or adding the omissions and then assessing whether probable cause exists. But here, the central issue was SA Haunold's failure to reveal to the magistrate court that ▓▓▓▓ had a lifetime history of defrauding people and was defrauding the government as to the circumstances of the June 9, 2024 shooting, which would have called into question the reliability of anything ▓▓▓▓ said or wrote to anyone, including alleged co-conspirator or

11

his "notes" to himself. The question is not whether his lies were against his penal interest but whether they benefited him personally, including financially. Unlike other cases cited by the government, there is no evidence that is "independent" of ■■■.

    D. <u>The February 2024 warrant is overbroad because it authorizes the seizure of evidence outside the date range for which any facts establishing probable cause are alleged in the affidavit</u>

Mr. Jones joins the arguments in the reply brief filed by Andy Duong [Dkt. No. unknown] as to this issue.

## CONCLUSION

For the reasons stated above, Andre Jones respectfully requests that this Court (1) order a *Franks* hearing regarding the affidavit's failure to disclose relevant information about Co-Conspirator-1; and (2) suppress the seizure of evidence from the February 23, 2024 warrant relating to events prior to October 2022.

Dated: January 29, 2026

                                    /s/      Shawn Halbert
                                    SHAWN HALBERT
                                    MARK GOLDROSEN
                                    Counsel for Andre Jones