MARK GOLDROSEN
255 Kansas St Ste 340
San Francisco, CA 94103-5154
Phone: 415-565-9600 | Fax: 415-565-9601
Email: markgoldro@aol.com

SHAWN HALBERT
California SBN 179023
217 Leidesdorff Street
San Francisco, California 94111
Telephone: (415) 515-1570
Email: shawn@shawnhalbertlaw.com

Attorney for Defendant
ANDRE JONES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO, ANDRE JONES, DAVID TRUNG DUONG, and ANDY HUNG DUONG<br><br>Defendant. | CASE NO. 25-CR-0003-YGR<br><br>**DEFENDANT ANDRE JONES'S JOINDER IN DEFENDANTS' MOTION TO DISMISS REGARDING *NAPUE* VIOLATIONS AND SUBMISSION OF ADDITIONAL VIOLATIONS**<br><br>Courtroom: Courtroom 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

Defendant Andre Jones hereby joins Defendants' Motion to Dismiss Regarding *Napue* Violations, Dkt. 499, and incorporates the law cited therein into this filing. Jones also submits additional violations under *Napue* as follows.

## I. False Material Testimony that Mario Juarez Gave Andre Jones a Check from Evolutionary Homes on November 29, 2023

Mario Juarez falsely testified on cross-examination that he personally gave Andre Jones the November 29, 2023 check for $35,000 from Evolutionary Homes:

> **Q.** And because you did not want to admit that to the jury, you lied and you said you gave Andre Jones the $35,000 check on November 29th, 2023?
>
> **MR. FINE:** Objection. Argumentative.
>
> **THE COURT:** Overruled. Yes or no?

**THE WITNESS:** I gave the check to him.

**BY MS. HALBERT:**
**Q.** You gave the check to Andre?

**A.** Yes.
**…**

**Q.** This is an important fact, right, because it would show that you were still in the loop with Andre Jones and David Duong?

**A.** Sure.

Vol. 18, Tr. Pp. 3929:11-3930:6.

The government knows that it is false that Mario Juarez had any involvement in physically giving a $35,000 check from Evolutionary Homes to Andre Jones on or about November 29, 2023. The government itself stated in its opening statement that Andre Jones picked up the check from David Duong: "You'll also hear in these board recordings that, in November 2023, Jones approached Juarez and the Duongs and asked for more money. You'll hear them discuss it. **And then you'll see that Andre Jones came to CWS to pick up another $35,000 check from David Duong.**" (Vol. 2 Tr. p. 339:19–23.) (emphasis added). The reason that the government felt confident in stating this fact in its opening is that it was aware that all of the documentary and cell site data in its possession proved this fact, including:

- The Evolutionary Homes check at issue was dated November 29, 2023 and was deposited that same day. Ex. 1388, Ex. 1346 at 153. The government possesses evidence that David Duong and Andre Jones arranged to meet on November 29, 2023: On November 27, 2023, Andre Jones texted David Duong to arrange a meeting, and David Duong responded, "Yes, let meet Wednesday 4:00 p.m." Ex. 629 at p. 5; *see also* Vol. 6 Tr. pp. 1306–07. (That Wednesday was November 29, 2023).
- The government produced cell site data for cell phones for all defendants as well as Mario Juarez; the government's expert created charts for certain key dates in the case where there were alleged to be meetings and where any of the relevant parties were shown to be at approximately the same location at the same time. Halbert Declaration ¶ 2 and Exhibit 1 at 6. The government expert's own cell site charts showed David Duong

and Andre Jones together at CWS on November 29, 2023, and did *not* show Mario Juarez to be anywhere near the relevant location (CWS's offices) on November 29, 2023. *Id.*

- As elicited at trial, Juarez's communications with Jones do not show any phone calls, texts or emails that would have enabled the two to arrange a meeting on November 29, 2023. On November 10, 2023, Juarez texted Jones, "On the request I was asked to referrer (sic) you to David." Ex. 97 at 9. Exhibit 97 shows that Andre Jones read the text the next day, and that there is no further text communication until Juarez texted Jones on January 3, 2024. *Id.* Their toll records summary exhibit is in accord, showing no calls between an attempted call from Juarez to Jones on November 9, 2023 (duration 13 seconds) and another attempted call from Juarez to Jones on January 3, 2024 (duration 17 seconds). Ex. 1821 p. 7. There is no email evidence between Juarez and Jones during this time period setting up a meeting on November 29, 2023. Halbert Declaration ¶ 3.

When during cross-examination Jones's defense counsel pointed out the absence of communications at any time near November 29, 2023, Juarez continued to lie and to claim that he physically gave Jones the check on November 29, 2023, responding: "I don't know about that, but I gave him the check." (Vol. 15 Tr. p. 3379).

The government was aware that Juarez had previously lied to agents and prosecutors about the same issue in his prior interviews with the government: On June 6, 2024, Juarez told the government that "[t]he check dated 11/29/2023 for $35,000 was a check Juarez picked up from Kristina then gave to Jones," and on July 19, 2024, he claimed that "Juarez gave the November 2023 check to Jones at the Peet's in Oakland, which is where Juarez gave all the checks to Jones." Halbert Declaration ¶ 4. The government knew, however, that there were no texts between Kristina Duong and Juarez coordinating a meeting on or around November 29, 2023 for Juarez to pick up a check, Halbert Declaration ¶ 5 and Exhibit 2 hereto (Trial Ex. 704 (not admitted) at 57-58), or any other documentation supporting such a meeting, and presumably that the cell site data contradicted that claim.

Therefore, the government is aware that Juarez's testimony that he personally gave the November 29, 2023 Evolutionary Homes check to Jones is false, and yet the government did not correct such false testimony. The false testimony is material because it relates to the central informant's

credibility. Further, the testimony is relevant to a critical issue in the case –whether Juarez had been cut out of Evolutionary Homes's payments to (and negotiations with) Jones at a critical time period, namely when the contract Juarez claimed existed between Jones and Evolutionary Homes had expired. Even Juarez conceded that whether or not he gave the $35,000 check to Jones on November 29, 2023 was an "important fact" because if true, "it would show that [Juarez] w[as] still in the loop with Andre Jones and David Duong." Vol. 18, Tr. pp. 3929-3930.

## II. Presumptively False Testimony that Mario Juarez Paid Samari Johnson $15,000

Mario Juarez testified on cross-examination that he paid Samari Johnson between $15,000 to $25,000 towards the $54,000 in fraudulent checks to the U.S. Postal Service that Juarez had given Johnson in 2022 to cover the postage for the three mailers. Later, Juarez testified that he paid Johnson $15,000. This testimony is either false or the defense has effectively been prevented from confirming the truth given the government's communications to date with witness Samari Johnson.

Initially, Juarez testified that he paid Samari Johnson a settlement in the false checks case that had been filed in state court. Defense counsel asked him to check his records that night before he appeared the following morning to continue his cross examination. Juarez testified the next day as follows:

> **Q.** Did you have a chance to look to see how much money you may have paid Mr. Samari Johnson?
>
> **A.** I believe it was direct payment of 15,000 or $25,000. And I didn't look at -- I just recall that.
>
> **Q.** Mr. Juarez, I have not seen a payment like that in your records. What causes you to say that you paid him 15- or $25,000?
>
> **A.** Discussions that I had with the district attorney and direct -- and my recollection of the conversation with my attorney directing me to pay Samari Johnson that amount.
>
> **Q.** Do you have any record of it?
>
> **A.** I didn't look for any records of it.
>
> **Q.** You did not find any records of it?
>
> **A.** I didn't look for --
>
> **THE COURT:** He didn't look.
>
> **BY MS. HALBERT:**
> **Q.** You didn't look. Okay.

(Vol. 15 at 3207:22-3208:13).

On cross-examination by a different attorney, Juarez testified as follows:

> **Q.** And you said you settled with him, the other day, for either 15,000 or $25,000; correct?
>
> **A.** I now know it's $15,000, and --
>
> **Q.** Okay.
>
> **A.** -- and it was payable to him, perhaps not enough for him, but then I see all these checks to the U.S. Postal Service.
>
> **Q.** Yeah. Okay. All right. So you still owe him, roughly -- I'm sorry. You don't owe him because you settled. He's out about $40,000; yes?
>
> **A.** No, the U.S. Postal Service is out.
>
> **Q.** Okay. But he -- do you know whether he had to cover that debt to the U.S. Postal Service?
>
> **A.** I know that he didn't cover that debt.

(Vol. 15 at 3525:2-15.) Although the 302s are not entirely clear, the defense believes that Johnson owes the money to the Post Office and is legally responsible for that debt of up to $54,000.

The defense has not been able to confirm any of Juarez's statements that he repaid Johnson $15,000 and that in so doing, he "settled" anything with Johnson, either by reference to Juarez's financial records or by reviewing the official state court record. Halbert Decl. ¶ 6. In its **twenty-five (25)** interviews and contacts with Samari Johnson between March 10, 2023 and November 12, 2026, the government appears to have gone out of its way to avoid any reference to money owed to Johnson by Juarez. Halbert Decl. ¶ 7. If Johnson has ever mentioned getting a payment from Juarez or what he is owed by Juarez (and it is difficult to imagine that he has not mentioned it), it was not documented in the twenty-five reports relating to the government's contact with Johnson. *Id.*

The only reference to any potential settlement by Juarez is in a January 10, 2025 FBI-302 in which Johnson contacted the FBI and told them that there had been a $15,000 proposal conveyed by the District Attorney's Office from Juarez's attorney, and that Johnson was unsure of whether to accept it: "Johnson is unsure if he should accept the 15,000 dollars. Johnson could badly use the money right now, but the issue is about more than the money to Johnson. The case is also about Johnson's pride and dignity, and Johnson wants there to be accountability." *Id.* A 302 prepared the next month indicates that

the District Attorney's Office had moved to dismiss the case and does not reference any payment to Johnson. *Id.*[1]

Given that Agent Barclay testified that the investigation began as an investigation into Juarez's fraudulent checks to the U.S. Postal Service and fraud on Samari Johnson, it defies credulity that the government would not know, years into the investigation, who paid the $54,000 loss, and how much money Johnson was repaid. There is no reference to a $15,000 or $25,000 repayment to Samari Johnson in any of the 302s that span March 2023 to November 2026.

Further, the government appears to be actively avoiding obtaining information that will prove that Juarez is lying. On October 5, 2026, Johnson spoke to Agent Haunold and told him that he "had questions relating to topics such as victim statements or **restitution**." Halbert Decl. ¶ 8 and Exhibit 5. (emphasis added). Agent Haunold described his response to Johnson as follows: "Johnson was informed that SA Haunold could not answer all his questions at this time, but that his questions seemingly pertained to potential proceedings that could occur after trial. Johnson was informed an FBI victim specialist could contact Johnson following completion of trial and inform him of any additional proceedings **dependant (sic) on outcomes at trial.**" *Id.*(emphasis added). But the outcome of this trial (*i.e.* whether or not any of the four defendants in this trial were convicted) cannot possibly affect the money that Johnson is owed by Juarez.

Perhaps because of Agent's Haunold's comment that the outcome of the proceedings against Thao, Jones, David Duong and Andy Duong might affect Johnson's financial recovery (restitution), Johnson contacted the FBI on November 11, 2026 to tell them that he had been contacted by a defense investigator; Agents Haunold and Barclay spoke to Johnson the following day; Johnson told them that a defense investigator wanted to ask him the following: "One question they had was whether Juarez paid

[1] Johnson also confided in Agents Haunold and Barclay how upset he was that the District Attorney's Office was dismissing the case. case is straightforward and there should be sufficient evidence. When asked where he could report misconduct by the Alameda County District Attorney's Office, the agents told him that they were "not familiar with the possible reporting options, but state and local governments/agencies often have internal affairs divisions that may take citizen complaints of misconduct. Johnson was advised to start by reviewing the ACDA website and State of California Government websites to find more information." *Id.* At that time, Juarez was cooperating with the government, and Johnson was never advised by agents that Juarez could be liable in federal court for the false checks he wrote to the U.S. Postal Service and gave to Johnson, a crime with which Juarez was never charged in federal court.

Johnson $25,000. They also wanted to know if the checks Juarez wrote Johnson were written to Johnson or to the United States Postal Service (USPS), and they asked how much money Juarez wired to Johnson. Another question was whether Johnson paid out of pocket to get his USPS permit out of debt." Halbert Decl. ¶ 8. Notably, on November 12, 2026, Agents Haunold (who has sat through the entire trial) and Barclay (who has been at counsel table the entire trial), deliberately did not obtain any answers from Johnson to questions including whether Johnson has received any payment from Juarez to date, presumably to avoid creating *Brady* material. *Id.*

## III. The Government did not Correct False Material Statements by Juarez during his Testimony regarding whether he had Previously told the Government Certain Facts

On the stand, Mr. Juarez recently fabricated several important statements, making claims that the defense had no idea were going to be said because he had never said them to the government before. As is relevant to this motion, Mr. Juarez lied about his recent fabrication, specifically claiming that he had told the government these facts during his cooperation with the government beginning in June 2024.

### A. Uncorrected False Claim that Sheng Thao was Trailing her Opponent by 11% in the Fall of 2022

Juarez testified repeatedly that he knew from polls provided by Andreas Cluver that in October 2022, Thao was trailing her opponent by 11 percentage points.

On November 9, 2026, when asked on cross-examination "you have never told the Government in all of your prior meetings with them that Sheng Thao was trailing Loren Taylor by 11 percent when you went to meet with her, right?" Juarez answered: "I believe I did tell the government, so…" (Tr. Vol. 14 at 3121:4-7) The Federal Bureau of Investigation FD-302 reports produced by the government do not support this assertion. The government produced approximately 30  reports (and similar documents) documenting government communications with Mr. Juarez between May 5, 2024 and October 25, 2026. These reports record material statements made by Mr. Juarez. The reports do not include any statements suggesting Juarez previously disclosed this information to the government. Halbert Decl. ¶ 9(a). Further, the government interviewed Cluver, who denied providing Juarez with any polling data. Nor would the government have been able to locate any such polling because it does not exist.

The government did not correct the record as to the fact that in his numerous interviews from

June 2024 to October 2026, Juarez had never made the statement that he had polling data showing that Sheng Thao was trailing Loren Taylor prior to the election. This is a material fact because according to Juarez, this differential supposedly provided the motivation for Sheng Thao to accept a Juarez's bribe of mailers.

**B. Uncorrected False Claim that Juarez Previously told the Government that Sheng Thao and Andre Jones told Juarez that they Wanted to be Millionaires**

On November 5, 2026, during direct examination, Juarez testified: "Additionally, the Mayor and Andre had said that they wanted to be millionaires. (Tr. Vol 12 at 2589:8-9) Juarez made references to Thao and/or Jones saying that they wanted to be millionaires ten different times during his testimony. On November 16, 2026, on cross-examination, Juarez testified as follows:

> **Q.** Over the course of your testimony you said ten times – I counted -- that Sheng Thao and Andre Jones wanted to be millionaires. In all of the meetings you had with the FBI agents and prosecutors from June of 2024 to October 2026, you never once said that Andre Jones or Sheng Thao had told you they wanted to be millionaires; isn't that correct?
>
> **A.** That's not correct.

(Tr. Vol 18 at 3920:13-17)

The Federal Bureau of Investigation FD-302 reports produced by the government do not support this assertion. The government produced approximately 30 reports (and similar documents) documenting government communications with Mr. Juarez between May 5, 2024 and October 25, 2026.. These reports record material statements made by Mr. Juarez. The reports do not include any statements suggesting Juarez previously disclosed to the government that either or both Sheng Thao or Andre Jones ever said that they wanted to be millionaires. Halbert Decl. ¶ 9(b). The government did not correct this false statement. The claim is clearly material on its face because it provides a purported motive for the crime allegedly committed by Jones and Thao (according to Juarez).

C. **Uncorrected False Claim that Juarez had Previously told the Government that Sheng Thao Lobbied City Council Members Fife and Bas To Buy Evolutionary Homes**

Juarez testified that Sheng Thao lobbied Oakland City Council members Carroll Fife and Nikki Fortunato Bas to buy Evolutionary Homes. Tr. Vol. 17 at 3744:19-3745:17. On November 13, 2026, Juarez falsely testified as follows:

> **Q.** I want to ask you about a few of -- and I won't go through all of them, but a few of the things

you said for the first time when testifying that you had not told the FBI before. For the first time on Friday, the 13th, you testified that Mayor Sheng Thao lobbied city council members Carroll Fife and Nikki Fortunato Bas to buy Evolutionary Homes; correct?

**A.** I believe they did, yes.
And that I testified that?

**Q.** Yes.
And you had never told that to the Government in all of your meetings over two and a half years; isn't that correct?

**A.** I don't think you're correct.

Tr. Vol. 18 at 3922:22-3923:5

The Federal Bureau of Investigation FD-302 reports produced by the government do not support this assertion. The government produced approximately 30 reports (and similar documents) documenting government communications with Mr. Juarez between May 5, 2024 and October 25, 2026.. These reports record material statements made by Mr. Juarez. The reports do not include any statements suggesting Juarez previously disclosed to the government that Sheng Thao lobbied City Council Members Nikki Fortunato Bas and Carroll fife to buy Evolutionary Homes. Halbert Decl. ¶ 9(c). The government did not correct Juarez's lies in its redirect examination. This lie was material because if then Mayor Sheng Thao had lobbied two City Council members in order to ensure that Oakland purchased units of Evolutionary Homes, that would (if it were true, which it was not) be significant action undertaken by Thao in purported furtherance of the conspiracy. Juarez had never before told the government that this occurred, and the government allowed him to lie about that fact.

In the above examples, Juarez fabricated new false testimony while on the stand, and the government allowed Juarez to falsely testify that he had previously made these statements to the government at some point during his extensive interviews between June 2024 and October 2026. The government could have corrected Juarez's testimony on redirect examination or called one or more of its agents who had been present at or reviewed the records of Juarez's debriefings in order to correct the record.

For the foregoing reasons, in addition to those stated in Dkt. 499, the defense requests that the

/ / /

Court dismiss the indictment with prejudice.

Dated: November 23, 2026

/s/______________________________
MARK GOLDROSEN
SHAWN HALBERT
Counsel for Andre Jones